IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-565

Filed: 2 February 2016

North Carolina Industrial Commission, No. 13-704011

FRANKLIN FALIN, Employee, Plaintiff,

v.

THE ROBERTS COMPANY FIELD SERVICES, INC., Employer, SELF-INSURED (KEY RISK MANAGEMENT SERVICES, INC., Third-Party Administrator), Defendants.

Appeal by defendant from opinion and award entered 24 March 2015 by the North Carolina Industrial Commission. Heard in the Court of Appeals 3 November 2015.

*Ricci Law Firm, P.A., by Brian M. Ricci, for plaintiff-appellee.*

*Ward and Smith, P.A., by William Joseph Austin, Jr., for defendant-appellant.*

BRYANT, Judge.

Where the Full Commission did not err in concluding that employment offered to plaintiff was not suitable pursuant to N.C. Gen. Stat. § 97-2(22), we affirm the Opinion and Award of the Full Commission.

In October of 2012, Franklin Falin, plaintiff, a resident of Kingsport, Tennessee, sought and accepted a construction job with The Roberts Company Field Services, Inc., defendant, specifically seeking work as an iron worker. The project plaintiff would work on was in Aurora, North Carolina, over 415 miles from his home.

On his application dated 15 October 2012, plaintiff indicated that he was "available for Out-of-Town jobs."

On 10 December 2012, plaintiff suffered a compensable injury to his left leg. When a large beam fell, it pinned plaintiff's leg against another beam, causing him to sustain a fracture to his left leg below the knee. Plaintiff's injury occurred at the job site in Aurora, North Carolina. That same day, Dr. Michael Kuhn performed surgery on plaintiff's leg. The surgery involved left tibial intermedullary nailing with two proximal and two distal locking screws. Plaintiff was discharged on 12 December 2012 and returned home to Kingsport, Tennessee for additional medical treatment. Defendants duly accepted liability.

On 19 December 2012, plaintiff visited Dr. Gregory Jeansonne of Associated Orthopaedics of Kingsport, Tennessee. Plaintiff reported significant pain as well as continued soft tissue swelling in his leg. He was told to keep his activity level to a minimum and was kept on non-weight-bearing status. As of 4 February 2013, Dr. Jeansonne allowed weight-bearing as tolerated in a CAM walker.

On 4 March 2013, plaintiff reported aching pain in the left knee with extended periods of ambulation. He also reported aching pain at the fracture site. The CAM walker was discontinued. On 13 March 2013, Dr. Jeansonne recommended formal physical therapy for knee/ankle range of motion and strengthening. On 29 April 2013, plaintiff reported continued pain and swelling with increased activities such as

physical therapy. On 24 May 2013, Dr. Jeansonne ordered a functional capacity evaluation ("FCE"). The FCE demonstrated that plaintiff could perform medium-level work.

In a letter dated 15 July 2013, Dr. Jeansonne noted that plaintiff had acceptable alignment at the fracture site. Dr. Jeansonne placed plaintiff at maximum medical improvement ("MMI") and assigned a nine percent disability rating to the lower extremity.

On 2 August 2013, Dr. Jeansonne reviewed defendant's job description for a Tool Clerk position. Dr. Jeansonne determined that plaintiff was "qualified to return to that job from an orthopedic standpoint." Although employed by defendant as an iron worker at the time of the injury, plaintiff's work history was diversified; he previously worked as a handyman, a machine operator, an assembly line worker, and a roofer.

On 20 August 2013, defendant offered plaintiff the Tool Clerk position at the Odfjell Project in Charleston, South Carolina. The position paid $21.00 per hour, plus a $7.00 per hour per diem, returning plaintiff to his pre-injury average weekly wages. The Tool Clerk position was within plaintiff's work restrictions and required that an employee perform at the medium level. The project in Charleston was 338 miles from plaintiff's residence in Tennessee.

On 26 August 2013, plaintiff accepted a job at Southern Classic Auto Wash for minimum wage. Plaintiff later began working as a traffic controller for Professional Management Services Group ("PMS Group"). Both jobs were near plaintiff's home in Tennessee. On 27 August 2013, plaintiff rejected the Tool Clerk position.

On 6 September 2013, defendant filed a Form 24, Application to Terminate or Suspend Payment of Compensation. Defendant averred that plaintiff's refusal to accept suitable employment justified termination of disability benefits based on N.C. Gen. Stat. §§ 97-2(22) and 97-32. On 17 September 2013, plaintiff submitted his response to the Form 24, contending that the job offered to him was not within 50 miles of his residence.

The Industrial Commission declined to make a ruling on the Form 24 application; therefore, the matter went to hearing on the issue of whether plaintiff's disability benefits, known as Temporary Partial Disability ("TPD") pursuant to N.C. Gen. Stat. § 97-30, should be terminated based on plaintiff's refusal to accept suitable employment. On 27 May 2014, a Deputy Commissioner heard testimony from plaintiff and a representative of defendant, and on 30 July 2014, the Deputy Commissioner filed his Opinion and Award in favor of plaintiff.

Defendant appealed to the Full Commission. Following a hearing, two members of the Full Commission issued an Opinion and Award holding that the job offered to plaintiff was not suitable employment because it was outside the 50-mile

radius from plaintiff's residence, and one member dissented with a separate opinion. The 2-1 decision of the Full Commission was handed down on 24 March 2015. Defendant appeals.

---

On appeal, defendant argues the Full Commission erred in its Conclusions of Law Nos. 3, 5, and 7, which are stated as follows:

> 3. Because the North Charleston tool clerk job was located 338 miles from plaintiff's permanent residence in Kingsport, it did not constitute "suitable employment" for plaintiff. The Commission concludes that a plain reading of N.C. Gen. Stat. § 97-2(22) compels this conclusion as the North Charleston job was located 338 miles from plaintiff's residence, far in excess of the 50-mile radius statutory requirement. However, even if distance-from-residence is but one factor to be considered in the analysis, the sheer distance involved here still overwhelms the other factors and as such the tool clerk job does not constitute "suitable employment." *Id.*
>
> . . .
>
> 5. Thus, defendant may not terminate payment of TPD compensation to plaintiff at this time as he has not unjustifiably refused suitable employment. N.C. Gen. Stat. § 97-32.
>
> . . .
>
> 7. The Commission concludes that one of the 2011 amendments that was designed to encourage claimants to return to work, that is, the enhancement of TPD compensation provision of N.C. Gen. Stat. § 97-30, fits neatly into the circumstances of this claim. As an iron worker, plaintiff made very good wages for someone with a

> limited formal education, but the compensable injury he sustained while working for defendant consigned plaintiff with work limitations that now prevent him the opportunity to make those wages as an iron worker anywhere for any employer. Ongoing TPD compensation to plaintiff recognizes and compensates for that reality. N.C. Gen. Stat. § 97-30.

Defendant's main contentions are that the Full Commission erred by holding the plain reading of N.C. Gen. Stat. § 97-2(22) compels the conclusion that the Charleston tool clerk job did not constitute suitable employment for plaintiff and that, therefore, defendant could not terminate payment of TPD compensation to plaintiff where he had not unjustifiably refused suitable employment. Because Conclusion of Law No. 7 is more a policy statement than a conclusion of law, we need not address any argument as to that issue.

Defendant first argues that the Full Commission erred in its Conclusion of Law No. 3 by determining that the plain reading of N.C. Gen. Stat. § 97-2(22)(2014), *amended by* 2015 N.C. Sess. Laws. 2015-286, compels the conclusion that a tool clerk job offered to plaintiff in Charleston, South Carolina did not constitute "suitable employment" within the meaning of the statute. Specifically, defendant argues that a plain reading of the statute, as well as the legislative intent behind the statute, both show that the requirement in N.C. Gen. Stat. § 97-2(22) that "suitable employment" must be within a 50-mile radius of plaintiff's residence is only one of several factors to be weighed in the analysis.

Review of an opinion and award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This 'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (internal citation omitted) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "The Commission's conclusions of law are reviewed *de novo*." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citation omitted). We note for the record that defendant does not challenge any of the Findings of Fact made by the Commission; therefore, we consider these binding on appeal. *Smith v. DenRoss Contracting, U.S., Inc.*, 224 N.C. App. 479, 483, 737 S.E.2d 392, 396 (2012). Further, defendant challenges only three of the Commission's eight Conclusions of Law.

North Carolina General Statute § 97-2(22) of the Workers' Compensation Act, defines "suitable employment" as follows:

> The term "suitable employment" means employment offered to the employee . . . that . . . (ii) after reaching maximum medical improvement is employment that the employee is capable of performing considering the employee's preexisting and injury-related physical and mental limitations, vocational skills, education, and experience and is located within a 50-mile radius of the employee's residence at the time of injury or the employee's

current residence if the employee had a legitimate reason to relocate since the date of injury. No one factor shall be considered exclusively in determining suitable employment.

N.C.G.S. § 97-2(22) (2014), *amended by* 2015 N.C. Sess. Laws 2015-286. The North Carolina appellate courts have not interpreted N.C. Gen. Stat. § 97-2(22) since its enactment in 2011.

"Questions of statutory interpretation are questions of law, which are reviewed *de novo* by this Court." *First Bank v. S & R Grandview, L.L.C.*, ___ N.C. App. ___, ___,755 S.E.2d 393, 394 (2014) (citations omitted). "The primary objective of statutory interpretation is to give effect to the intent of the legislature." *Id.* (citation omitted). "The plain language of the statute is the primary indicator of legislative intent." *Id.* (citation omitted). "When, however, 'a statute is ambiguous, judicial construction must be used to ascertain the legislative will.' " *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (quoting *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136–37 (1990)). Ambiguity arises when statutory language is "fairly susceptible of two or more meanings." *State v. Sherrod*, 191 N.C. App. 776, 778–79, 663 S.E.2d 470, 472 (2008) (quoting *Abernethy v. Bd. of Comm'rs of Pitt Cnty.*, 169 N.C. 631, 636, 86 S.E. 577, 580 (1915)). "In determining legislative intent, [this Court] may 'assume that the legislature is aware of any judicial construction of a statute.' " *Blackmon v. N.C. Dep't of Corr.*, 343 N.C. 259, 265, 470

S.E.2d 8, 11 (1996) (quoting *Watson v. N.C. Real Estate Comm'n*, 87 N.C. App. 637, 648, 362 S.E.2d 294, 301 (1987)).

The North Carolina appellate courts have long held that placement of punctuation within a statute is used as a means of "making clear and plain" the English language therein; therefore, punctuation and placement should be regarded in the process of statutory interpretation. *See Stephens Co. v. Lisk*, 240 N.C. 289, 293–94, 82 S.E.2d 99, 102 (1954). Furthermore, "[o]rdinary rules of grammar apply when ascertaining the meaning of a statute, and the meaning must be construed according to the context and approved usage of the language." *Dunn v. Pac. Emp'rs Ins. Co.*, 332 N.C. 129, 134, 418 S.E.2d 645, 648 (1992) (citations omitted).

Defendant concentrates on the last sentence of the section of the statute at issue: "No one factor shall be considered exclusively in determining suitable employment." N.C.G.S. § 97-2(22). In focusing on this last sentence of the statute, defendant argues that the "50-mile radius" language within the statute is not a requirement but rather a factor to be balanced against the others: "the employee's preexisting and injury-related physical and mental limitations, vocational skills, education, and experience . . . ." *Id.* In other words, defendant asserts that the structure of the statute specifies several factors that should be weighed, the "50-mile radius" factor being one of the five in the series not to be "considered exclusively in determining suitable employment." *Id.*

However, defendant ignores the grammatical construction of the statute, which separates the 50-mile radius requirement as an entirely separate clause, not joined to the other "factors" by a comma, and thus not part of that serial list of factors. The statute could easily have been written in the reverse order, which negates the fact that the 50-mile radius requirement is an element in a series: "The term 'suitable employment' means employment offered to the employee that . . . is located within a 50-mile radius of the employee's residence . . . ." *Id.* In fact, the factors in the series are distinguished from the 50-mile radius requirement grammatically in that the factors are all nouns (i.e., vocational skills, education, etc.) and the 50-mile radius requirement is an adjectival phrase ("located within a 50-mile radius"). "Every element of a parallel series must be a functional match of the others (word, phrase, clause, sentence) and serve the same grammatical function in the sentence (e.g., noun, verb, adjective, adverb). When linked items are not like items, the syntax of the sentence breaks down . . . ." *The Chicago Manual of Style* § 5.212 (16th ed. 2010).

The legislature could have chosen to write the statute to include distance as a factor in defining "suitable employment": "The term 'suitable employment means employment offered to the employee that . . . is employment that the employee is capable of performing considering the employee's preexisting and injury-related physical and mental limitations, vocational skills, education, experience, *and the work or project site's distance from the employee's residence . . . .*" N.C.G.S. § 97-2(22)

(words and emphasis added). This the legislature did not do. Therefore, to read the statute as including the 50-mile radius requirement as a "factor" would ignore the "ordinary rules of grammar" and disregard the legislature's intent that the 50-mile radius language be a requirement rather than merely a factor to be considered. *See Dunn*, 332 N.C. at 134, 418 S.E.2d at 648. Our statutory analysis is consistent with the ultimate conclusions reached by the Full Commission.

Further, as noted, none of the Findings of Fact are challenged. In Conclusion of Law No. 3, the Commission stated "even if distance-from-residence is but one factor to be considered in the analysis, the sheer distance involved here still overwhelms the other factors and as such the tool clerk job does not constitute suitable employment.' " Therefore, by the Commission's own analysis it concluded that even if the 50-mile radius requirement is a factor and not a requirement, the distance factor significantly outweighed the others. "[T]he Full Commission is the sole judge of the weight and credibility of the evidence. This Court is not at liberty to reweigh the evidence and to set aside the findings simply because other conclusions might have been reached." *McLeod v. Wal-Mart Stores, Inc.*, 208 N.C. App. 555, 560, 703 S.E.2d 471, 475 (2010) (citation and quotation marks omitted).

We also note that defendant does not challenge Conclusion of Law No. 4, which states:

> Plaintiff was justified in his refusal of the North
> Charleston tool clerk job because of the great distance from

> his home and the indefinite duration of time that it would have required him to be away from his family. Plaintiff also found suitable and steady employment relatively quickly after his treating physician released him to return to work at medium duty. *Id.*; N.C. Gen. Stat. § 97-32.

Therefore, based on the Commission's analysis in reaching Conclusion of Law No. 3, and based on the full record before us, Conclusion of Law No. 5— "defendant may not terminate payment of TPD compensation to plaintiff at this time as he has not unjustifiably refused suitable employment"—was properly supported and not erroneous as a matter of law. Accordingly, defendant's argument is overruled.

We affirm the Opinion and Award of the Full Commission.

AFFIRMED.

Judges CALABRIA and ZACHARY concur.