IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-873

Filed: 21 August 2018

Watauga County, No. 14 CVS 416

DALE THOMAS WINKLER; and DJ'S HEATING SERVICE, Petitioner,

v.

NORTH CAROLINA STATE BOARD OF PLUMBING, HEATING & FIRE SPRINKLER CONTRACTORS, Respondent.

Appeal by Respondent from Order entered 15 May 2017 by Judge Edwin G. Wilson in Watauga County Superior Court. Heard in the Court of Appeals 7 March 2018.

*Bailey & Dixon, LLP, by Jeffrey P. Gray, for Petitioner-Appellee.*

*Young Moore and Henderson, P.A., by Angela Farag Craddock, John M. Fountain, and Reed N. Fountain, for Respondent-Appellant.*

*Nichols, Choi & Lee, PLLC, by M. Jackson Nichols, for Amicus Curiae, North Carolina Board of Architecture & State Board of Chiropractic Examiners, and Anna Baird Choi, for Amicus Curiae, State Licensing Board for General Contractors.*

*Janet B. Thoren, for Amicus Curiae, North Carolina Real Estate Commission.*

INMAN, Judge.

The North Carolina State Board of Examiners of Plumbing, Heating & Fire Sprinkler Contractors (the "Board") appeals from an order awarding Dale Thomas

Winkler d/b/a DJ's Heating Service ("Winkler") $29,347.47 in attorneys' fees and costs pursuant to N.C. Gen. Stat. § 6-19.1. Because the statute excludes cases arising out of the defense of a disciplinary action by a licensing board, we reverse the trial court's order.

**Facts and Procedural History**

This is the second appeal to this Court in this case. Facts relevant to this appeal follow, but additional procedural and factual history of the litigation is included in our decision in the prior appeal. *See Winkler v. State Bd. of Examiners of Plumbing, Heating & Fire Sprinklers Contractors*, __ N.C. App. __, 790 S.E.2d 727 (2016) (*Winkler I*).

In April 2013, the management staff at the Best Western Hotel in Boone, North Carolina, asked Winkler, who held a Heating Group 3 Class II (H-3-II) residential license, to examine the pool heater located at the hotel. Although Winkler was licensed only to work on detached residential HVAC units, he took the job. After examining the pool heater, Winkler determined that it was not working because the gas supply had been turned off. He then located the fuel supply in the pool equipment room, turned it on, and the pool heater again worked.

Days later, on 16 April 2013, two guests died in Room 225 of the hotel, which was above the pool equipment room. Hotel management closed the room until a gas

fireplace in the room could be checked for leaks. At the time, the cause of the guests' death had yet to be determined.

Hotel management hired Winkler to examine the fireplace in Room 225 and the ventilation system for the pool heater. Winkler "soaped" the gas lines on both the fireplace and the pool heater and determined there were no gas leaks. Winkler did not, however, check for carbon monoxide, because he did not have the proper equipment. Winkler told hotel management that the ventilation system seemed to be working.

Following Winkler's inspections, hotel staff reopened Room 225 in late May 2013. On 8 June 2013, a third guest died in the room and a fourth was injured.

After the third guest died, autopsies and toxicology reports for the first two guests were completed and indicated that they had died from lethal concentrations of carbon monoxide. Toxicology reports for the third and fourth guests also indicated excessive levels of carbon monoxide in their blood.

The Board undertook its own investigation after issuance of the toxicology reports. Board investigators determined that carbon monoxide from the pool heater ventilation system could enter Room 225 through openings near the fireplace logs and an HVAC unit. The investigators also observed corrosion over a substantial portion of the ventilation pipe holes for the pool heater. In connection with the

Board's investigation, Winkler signed an affidavit swearing that he had never performed work for which he was not licensed.

Winkler ultimately admitted to the Board in a disciplinary licensing proceeding that he had installed a replacement HVAC system in the hotel lobby, performing work beyond his license qualification. The Board concluded that Winkler had engaged in misconduct in violation of his license and suspended his license for one year. The Board also required Winkler to enroll in several courses to remedy the deficiencies in his knowledge.

Winkler appealed the Board's decision to the Watauga County Superior Court. Following a hearing, the court affirmed the Board's decision in its entirety. Winkler then appealed to this Court on the ground that the Board lacked jurisdiction to discipline Winkler for his incompetence in working on the pool heater. He did not challenge the discipline for his misconduct related to the HVAC system in the hotel lobby.

On 20 September 2016, this Court held that the Board did not have jurisdiction to discipline Winkler for the pool heater inspection. *Winkler I*, __ N.C. App. at __, 790 S.E.2d at 739. This Court remanded the matter back to the Board for entry of a new order based solely on Winkler's misconduct related to the installation of the HVAC system. *Id.* at __, 790 S.E.2d at 739.

The Board reheard the matter, and, on 19 December 2016, issued a revised disciplinary order placing Winkler on probation for 12 months and requiring him to complete coursework and other conditions of probation.

On 24 October 2016, Winkler filed a motion for attorneys' fees and costs in Watauga County Superior Court. Winkler's motion sought fees pursuant to N.C. Gen. Stat. §§ 6-19.1 and 6-20 based on his successful defense against allegations of misconduct that the Board knew, or should have known, was outside the Board's statutory authority. The trial court entered an order on 2 May 2017 awarding Winkler $29,347.47 in attorneys' fees and costs.

The Board timely appealed and moved to stay the order awarding attorneys' fees pending the resolution of this appeal. The motion to stay was granted on 7 June 2017.

## Analysis

The Board argues that the plain language of N.C. Gen. Stat. § 6-19.1—the statute upon which Winkler based his claim for attorneys' fees—along with the legislative intent of the statute, excludes claims for attorneys' fees incurred in disciplinary actions by licensing boards from the purview of the statute. We agree.

*1. Standard of Review*

We review the trial court's interpretation of N.C. Gen. Stat. § 6-19.1 *de novo.* *See, e.g., Applewood Props., LLC v. New S. Props., LLC*, 366 N.C. 518, 522, 742 S.E.2d

776, 779 (2013) (holding that questions of statutory construction are questions of law reviewed *de novo*).

### 2. *Statutory Construction*

Section 6-19.1 of the North Carolina General Statutes governs the trial court's ability to award attorneys' fees for a prevailing party in certain civil actions. The relevant portion of the statute provides as follows:

> (a) In any civil action, other than an adjudication for the purpose of establishing or fixing a rate, o*r a disciplinary action by a licensing board*, brought by the State or brought by a party who is contesting State action pursuant to [N.C. Gen. Stat. §] 150B-43 or any other appropriate provisions of law, unless the prevailing party is the State, the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees, including attorney's fees applicable to the administrative review portion of the case, in contested cases arising under Article 3 of Chapter 150B, to be taxed as court costs against the appropriate agency if:
>
> > (1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and
> >
> > (2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust. . . .

N.C. Gen. Stat. § 6-19.1(a) (2017) (emphasis added). Winkler and the Board dispute whether the legislature intended for the phrase "or a disciplinary action by a licensing board" to include such proceedings within the scope of the statute, or to exclude them.

The Board argues that the phrase "other than" immediately following the phrase "any civil action" removes adjudications for establishing or fixing a rate and disciplinary actions by licensing boards from the overarching category of "any civil action" provided for by the statute.[1]  This interpretation would result in the following reading: "**In any civil action**—*other than* an adjudication for the purpose of establishing or fixing a rate, *or* a disciplinary action by a licensing board—**brought by the State** . . . ."  The effect of this interpretation is to exclude from the statute both adjudications for the purpose of establishing or fixing a rate *and* disciplinary actions by licensing boards.

Winkler argues, on the other hand, that the phrase "a disciplinary action by a licensing board" is a second classification, in addition to "any civil action," to which the statute applies.  This interpretation leads to the following reading: "**In any civil action**—*other than* an adjudication for the purpose of establishing or fixing a rate—**or a disciplinary action by a licensing board**, **brought by the State** . . . ."  The effect of this interpretation is to include disciplinary actions by licensing boards within the purview of the statute, while excluding only adjudications for the purpose of establishing or fixing a rate.

a. Plain Language of N.C. Gen. Stat. § 6-19.1

---

[1] This argument is joined by the North Carolina Boards of Architecture, Chiropractic Examiners, and General Contractors and the Real Estate Commission in their joint *amicus curiae* brief.

"The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Dickson v. Rucho*, 366 N.C. 332, 339, 737 S.E.2d 362, 368 (2013) (internal quotation marks and citation omitted). The first place courts look to ascertain the legislative intent is the plain language of the statute. *See First Bank v. S&R Grandview, L.L.C.*, 232 N.C. App. 544, 546, 755 S.E.2d 393, 394 (2014) ("The plain language of a statute is the primary indicator of legislative intent." (citation omitted)); *see also N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) ("Because the actual words of the legislature are the clearest manifestation of its intent, we give every word of the statute effect, presuming that the legislature carefully chose each word used.").

The North Carolina Supreme Court has further explained that "[a] statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 216, 388 S.E.2d 134, 140 (1990) (internal quotation marks and citation omitted).

Based on the plain language of Section 6-19.1, including not only the words but also the punctuation and ordering of phrases, we reach the conclusion that disciplinary actions by licensing boards are not within the scope of the statute.

"The North Carolina appellate courts have long held that placement of punctuation within a statute is used as a means of 'making clear and plain' the

English language therein; therefore, punctuation and placement should be regarded in the process of statutory interpretation." *Falin v. Roberts Co. Field Servs., Inc.*, 245 N.C. App. 144, 149, 782 S.E.2d 75, 79 (2016) (quoting *Stephens Co. v. Lisk*, 240 N.C. 289, 293-94, 82 S.E.2d 99, 102 (1954)). "Ordinary rules of grammar apply when ascertaining the meaning of a statute, and the meaning must be construed according to the context and approved usage of the language." *Dunn v. Pacific Employers Ins. Co.*, 332 N.C. 129, 134, 418 S.E.2d 645, 648 (1992) (citations omitted).

We start by examining the language and structure of the first half of N.C. Gen. Stat. § 6-19.1, which contains the provision in dispute: "In any civil action, other than an adjudication for the purpose of establishing or fixing a rate, or a disciplinary action by a licensing board, brought by the State or brought by a party who is contesting State action pursuant to G.S. 150B-43 or any other appropriate provisions of law[.]" N.C. Gen. Stat. § 6-19.1.

The legislature's use of the word "any" before the phrase "civil action" differentiates the phrase from the two phrases following "other than"—"*an adjudication for the purpose of establishing or fixing a rate*" and "*a disciplinary action by a licensing board*"—each introduced with a singular indefinite article, respectively "an" and "a." The singular indefinite articles convey that rate cases and licensing board actions are separate and distinct members of the class of "any civil action," and therefore are excluded from the statute.

The Board argues, and we agree, that the words "other than" exclude from the broader class of "any civil actions" certain specified actions listed immediately after the words "other than." It is undisputed that the phrase "an adjudication for the purpose of establishing or fixing a rate" is modified by the exclusionary words of "other than." It follows that the exclusionary words also modify the phrase "a disciplinary action by a licensing board," which similarly begins with a singular indefinite article. This interpretation is consistent with the rule of statutory construction that "[e]very element of a parallel series must be a functional match of the others (word, phrase, clause, sentence) and serve the same grammatical function in the sentence (e.g., noun, verb, adjective, adverb)." *Falin*, 245 N.C. App. at 150, 782 S.E.2d at 79. Had the legislature sought to include disciplinary actions by licensing boards within the scope of the statute, it would not have used a single indefinite article and a singular form of the term "action."

This interpretation is also consistent with the structure of N.C. Gen. Stat. § 6-19.1. A series of commas offsets the exclusions following "other than" from the category of actions within "any civil action": "In any civil action **[comma]** *other than* an adjudication for the purpose of establishing or fixing a rate **[comma]** or disciplinary action by a licensing board **[comma]** brought by the State . . . ." By using the last comma to separate the phrase "disciplinary action by a licensing board" from the phrase "brought by the State . . . ," the legislature extended the statutory

exclusion to disciplinary actions. Had the legislature intended otherwise, there would have been no need for the third comma. This structural interpretation is consistent with prior decisions by the North Carolina Supreme Court, which have quoted N.C. Gen. Stat. § 6-19.1 in a simplified form, removing those offset exclusions as follows: "In any civil action . . . brought by the State or brought by a party who is contesting State action pursuant to G.S. 150B-43 . . . ." *See, e.g., Crowell Constructors, Inc. v. Cobey*, 342 N.C. 838, 842-43, 467 S.E.2d 675, 678 (1996); *and Able Outdoor, Inc. v. Harrelson*, 341 N.C. 167, 169-70, 459 S.E.2d 626, 627 (1995). In eliminating the exclusions and not including a comma to separate "any civil action" from "brought by the State," these prior decisions illustrate the syntax of the statute—*i.e.*, the phrase "[i]n any civil action . . . brought by the State . . . " is separate and distinct from the phrase "other than an adjudication for the purpose of establishing or fixing a rate, or a disciplinary action by a licensing board[.]" This distinction exists as a means of delineating what is and is not within the scope of the statute and supports our interpretation of disciplinary actions as being categorized with the other exception to the statute.

Because the phrase "a disciplinary action by a licensing board" is designated with the indefinite article "a," and is separated from the rest of the statute by way of commas, we hold that the plain language of the statute conveys the legislature's

intent to exclude disciplinary actions by licensing boards from the purview of the N.C. Gen. Stat. § 6-19.1.

b. Statutory Interpretation of N.C. Gen. Stat. § 6-19.1

In addition to the plain language of N.C. Gen. Stat. § 6-19.1, the statutory interpretation and legislative history of the statute support excluding disciplinary actions by licensing boards from its scope.

Neither Section 6-19.1 nor Chapter 6 of the General Statutes in its entirety defines "any civil action" or "a disciplinary action by a licensing board." This Court, in recognizing a similar lack of definitions in Chapter 6 for the terms "agency" or "State action," has turned to Chapter 150B of the North Carolina General Statutes— specifically the North Carolina Administrative Procedure Act ("APA")—because of its reference in Section 6-19.1. *Izydore v. City of Durham*, 228 N.C. App. 397, 400, 746 S.E.2d 324, 326 (2013).

The APA sets forth the procedure for a party to appeal for judicial review from a final decision in a "contested case," when the party has exhausted all administrative remedies. N.C. Gen. Stat. § 150B-43 (2017). A contested case is defined as "an administrative proceeding pursuant to this Chapter to resolve a dispute between an agency and another person that involves the person's rights, duties, or privileges, including *licensing* or the levy of a monetary penalty. . . ." N.C. Gen. Stat. § 150B-2(2) (emphasis added). Licensing is defined as "any administrative action issuing,

failing to issue, suspending, or revoking a license or occupational license."  N.C. Gen. Stat. § 150B-2(4).  Therefore, disciplinary actions by a licensing board necessarily fall within the scope of the APA's definition of a "contested case."

This Court, in *Walker v. N.C. Coastal Resources Comm'n*, 124 N.C. App. 1, 476 S.E.2d 138 (1996), addressed whether attorneys' fees may be awarded pursuant to N.C. Gen. Stat. § 6-19.1 in contested cases as defined by the APA.  The Court drew a distinction between the "administrative review" portion of a case—*i.e.*, the agency proceedings—and the "judicial review" portion of a case—*i.e.*, the appeal to a general court of justice from the final administrative decision.  *Id.* at 11, 476 S.E.2d at 144. *Walker* held that the "judicial review" portion of the case falls within the definition of "any civil action," and accordingly affirmed an award of attorneys' fees pursuant to N.C. Gen. Stat. § 6-19.1 for the judicial review phase of the case.  *Id.* at 12, 476 S.E.2d at 144-45.  However, the Court held that "an administrative hearing under G.S. 150B-22 *et seq.* is not a 'civil action . . . brought . . . pursuant to G.S. 150A-43 [now 150B-43][,]' " and therefore N.C. Gen. Stat. § 6-19.1 did not provide for an award of attorneys' fees for the "administrative review" portion of the case.  *Id.* at 12, 476 S.E.2d at 145 (citations omitted) (alterations in original).

Following *Walker*, the General Assembly amended N.C. Gen. Stat. § 6-19.1, adding the following language:  ". . . the court may, in its discretion, allow the prevailing party to recover reasonable attorney's ~~fees~~ fees, including attorney's

applicable to the administrative review portion of the case, in contested cases under Article 3 of Chapter 150B, to be taxed as court costs against the appropriate agency . . . ." 2000 N.C. Sess. Law 2000-190, § 1. The result of this amendment was that, in contested cases under Article 3 of Chapter 150B—cases heard by the Office of Administrative Hearings—a trial court may award attorneys' fees for the administrative review proceeding, contrary to the holding in *Walker*.

By amending Section 6-19.1 after *Walker* to provide specifically for recovery of attorneys' fees incurred in the administrative review portions of Article 3 cases, and omitting any mention of the administrative review portions of Article 3A cases—the Article under which this case presently arises—the legislature revealed its intent not to provide for recovery of attorneys' fees incurred in disciplinary actions by licensing boards. *See, e.g., N.C. Dep't of Revenue v. Hudson*, 196 N.C. App. 765, 768, 675 S.E.2d 709, 711 (2009) ("When a legislative body includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the legislative body acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks, alteration, and citation omitted)).

Accordingly, we conclude that, when read as a whole and based on the legislative history of N.C. Gen. Stat. § 6-19.1, the language "a disciplinary action by a licensing board" was intended to exclude such actions from the purview of the statute.

## Conclusion

For the foregoing reasons, we hold that the trial court erred as a matter of law by awarding Winkler attorneys' fees pursuant to N.C. Gen. Stat. § 6-19.1 because the language of Section 6-19.1 excludes "a disciplinary action by a licensing board" from the statute.  We therefore reverse the trial court's order.


REVERSED.

Judges ELMORE and BERGER concur.