IN THE SUPREME COURT OF NORTH CAROLINA

No. 319PA18

Filed 5 June 2020

DALE THOMAS WINKLER, and DJ'S HEATING SERVICE

v.

NORTH CAROLINA STATE BOARD OF PLUMBING, HEATING & FIRE SPRINKLER CONTRACTORS

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 261 N.C. App, 106, 819 S.E.2d 105 (2018), reversing an order entered on 15 May 2017 by Judge Edwin G. Wilson in Superior Court, Watauga County. On 14 August 2019, the Supreme Court allowed defendant's conditional petition for discretionary review as to additional issues. Heard in the Supreme Court on 6 January 2020.

*Bailey & Dixon, LLP, by Jeffrey P. Gray, for petitioner-appellants.*

*Young Moore and Henderson P.A., by Angela Farag Craddock, John N. Fountain, and Reed N. Fountain, for respondent-appellee.*

*Nichols, Choi & Lee, PLLC, by M. Jackson Nichols, Anna Baird Choi, and Christina D. Cress; and North Carolina Real Estate Commission, by Janet B. Thoren, for the North Carolina Board of Architecture, North Carolina Board of Barber Examiners, North Carolina Real Estate Commission, North Carolina State Board of Chiropractic Examiners, and State Licensing Board for General Contractors, amici curiae.*

BEASLEY, Chief Justice.

In this case, the Court is asked to consider whether a trial court may award attorney's fees to a prevailing party in a disciplinary action by a licensing board. Because we conclude that N.C.G.S. § 6-19.1 does not preclude a trial court from awarding attorney's fees in disciplinary actions by a licensing board, we modify and affirm the holding below.

I.      Factual and Procedural Background

In April 2013, maintenance staff from the Best Western Hotel in Boone, North Carolina, contacted Dale Thomas Winkler f/k/a DJ's Heating Service (Winkler) to examine the hotel's pool heater. Winkler held a Heating Group 3 Class II (H-3-II) residential license that qualified him to work on detached residential HVAC units and, as such, he was not licensed to perform the work requested. Upon examining the heater, despite the fact that he was not equipped with the appropriate licensure, Winkler determined that the gas supply had been turned off. He located the fuel supply in the pool equipment room and turned on the gas.

On 16 April 2013, several days after Winkler examined the pool heater, two guests died in Room 225 of the hotel, located above the pool equipment room. The hotel closed the room until it could be checked for gas leaks. At the time, the cause of death for both guests was undetermined.

The hotel contacted Winkler, asking him to examine the ventilation system for the pool heater and the fireplace in Room 225. During his visit, Winkler performed a soap test to check for gas leaks and determined there were no leaks. Without checking

for carbon monoxide, Winkler informed the hotel that the ventilation system appeared to be working.

Following Winkler's inspection, the hotel reopened Room 225 in late May 2013. On 8 June 2013, one guest died and another guest was injured while staying in Room 225. Shortly after the third death, toxicology reports from the first two guests were performed and indicated that both individuals had a lethal concentration of carbon monoxide in their blood. Toxicology reports later performed on the third and fourth guests also indicated excessive levels of carbon monoxide in their blood.

Following the issuance of the toxicology reports, the North Carolina State Board of Plumbing, Heating, & Fire Sprinkler Contractors (the Board) performed its own investigation and determined that carbon monoxide from the ventilation system for the pool heater had entered Room 225 through openings near the room's fireplace and HVAC unit. After he admitted to the Board that he had performed work beyond his license qualification, the Board suspended Winkler's license for one year and ordered him to complete multiple courses.

Winkler appealed the Board's decision to the Superior Court, Watauga County. The trial court entered an order on 22 June 2015 affirming the Board's decision. On appeal to the North Carolina Court of Appeals, Winkler challenged the Board's jurisdiction to discipline him for working on the pool heater without proper licensure. On 20 September 2016, the Court of Appeals held that N.C.G.S. § 87-21 did not grant the Board jurisdiction to discipline Winkler for conducting the pool heater inspection.

*Winkler v. State Bd. of Exam'rs of Plumbing, Heating & Fire Sprinklers Contractors* (*Winkler I*), 249 N.C. App. 578, 599, 790 S.E.2d 727, 739 (2016). The Court of Appeals vacated the portion of the Board's order relating to Winkler's inspection of the pool heater and remanded the case to the Board for entry of a new order based on other misconduct.

On 24 October 2016, Winkler filed a motion for attorney's fees and costs in Superior Court, Watauga County, pursuant to N.C.G.S. §§ 6-19.1 and 6-20, arguing that the Board knew or should have known that it lacked authority to discipline him for the pool heater inspection. The trial court entered an order awarding Winkler $29,347.47 in attorney's fees and costs. The Board appealed the order and moved to stay the order awarding attorney's fees and costs pending appeal.

The Court of Appeals ultimately held that the trial court erred in awarding Winkler attorney's fees pursuant to N.C.G.S. § 6-19.1 because, when read as a whole, the statute excludes cases arising out of the defense of a disciplinary action by a licensing board. *Winkler v. N.C. State Bd. of Plumbing, Heating & Fire Sprinkler Contractors* (*Winkler II*), 261 N.C. App. 106, 114, 819 S.E.2d 105, 110–11 (2018). We disagree.

II.    Discussion

In North Carolina, a trial court may award attorney's fees only as authorized by statute. *City of Charlotte v. McNeely*, 281 N.C. 684, 691, 190 S.E.2d 179, 185 (1972). Section 6-19.1 of the North Carolina General Statutes governs a trial court's

ability to award attorney's fees. The relevant portion of the statute provides the following:

> In any civil action, other than an adjudication for the purpose of establishing or fixing a rate, or a disciplinary action by a licensing board, brought by the State or brought by a party who is contesting State action pursuant to G.S. 150B-43 or any other appropriate provisions of law, unless the prevailing party is the State, the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees, including attorney's fees applicable to the administrative review portion of the case, in contested cases arising under Article 3 of Chapter 150B, to be taxed as court costs against the appropriate agency if:
>
> > (1)      The court finds that the agency acted without substantial justification in pressing its claim against the party; and
> >
> > (2)      The court finds that there are no special circumstances that would make the award of attorney's fees unjust.

N.C.G.S. § 6-19.1(a) (2019).

The Board contends that the phrase "or a disciplinary action by a licensing board" was intended to be an exclusion to the statute; Winkler, on the other hand, argues that rate-fixing cases are the only exclusion to the statute. Thus, this case presents an issue of statutory interpretation, which we review de novo. *Applewood Props., LLC v. New S. Props., LLC*, 366 N.C. 518, 522, 742 S.E.2d 776, 779 (2013).

1. Statutory Construction of N.C.G.S. § 6-19.1

This Court has long recognized that, "[w]hen the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) (quoting *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006)). When the statutory language is ambiguous, however, the Court will ascertain legislative intent. *Id.*

Furthermore, courts should construe the statute so that "none of its provisions shall be rendered useless or redundant." *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981). Based on the Court's review of the words and punctuation used in N.C.G.S. § 6-19.1, we conclude that the statute is ambiguous.

The disputed language of N.C.G.S. § 6-19.1 is contained in the first half of the statute which reads that "[i]n any civil action, other than an adjudication for the purpose of establishing or fixing a rate, or a disciplinary action by a licensing board, brought by the State or brought by a party who is contesting State action . . . ." Both parties argue that the grammatical structure of the statute supports only their own interpretation of the statute and precludes that of their opponent, and the Court of Appeals relied heavily on the placement of commas and indefinite articles for its

interpretation.

Ordinarily, the placement and use of punctuation aids in the process of statutory interpretation. *Stephens Co. v. Lisk*, 240 N.C. 289, 293–94, 82 S.E.2d 99, 102 (1954) (citing *State v. Bell*, 184 N.C. 701, 115 S.E. 190 (1922)). But while punctuation "is intended to and does assist in making clear and plain the meaning of all things else in the English language," this Court has also recognized that punctuation "is not an infallible standard of construction," *Bell*, 184 N.C. at 706, 115 S.E. at 192. The statute at issue here demonstrates the fallibility of reliance on grammatical structure alone. Here each of the proposed constructions is marred by a punctuation or usage error. Thus, while we typically discuss statutory ambiguity in terms of the provision being equally susceptible of multiple interpretations, we see the opposite problem here—from a grammatical perspective, the provision at issue is equally *unsusceptible* of each proposed interpretation.

It is undisputed that the introductory phrase of N.C.G.S. § 6-19.1(a) sets out a broad category of actions—"any civil action"—in which, upon proper findings, the trial court may award attorney's fees. Likewise, everyone agrees that the clause immediately following the introductory phrase, which is set off by a pair of commas, delineates a subcategory of civil actions that are excluded from the provision—"an adjudication for the purpose of establishing or fixing a rate." The dispute in the instant case arises over the function of the next clause, which is also set off by a pair of commas, and reads as follows: "or a disciplinary action by a licensing board." There

are two possible interpretations. Either the statute contains two broad categories of actions in which attorney's fees may be awarded—civil actions and disciplinary actions by licensing boards—or it contains two subcategories of civil actions excluded from the provision allowing the trial court to award attorney's fees—rate-fixing actions and disciplinary actions by licensing boards.

The second interpretation—that disciplinary actions are a second subcategory of civil actions excepted from the broad category of civil actions and therefore are not eligible for an award of attorney's fees—is the interpretation adopted by the Court of Appeals.

As the Court of Appeals pointed out, this construction has the benefit of parallel structure. *See Winkler II*, 261 N.C. App. at 112, 819 S.E.2d at 109 (quoting *Falin v. Roberts Co. Field Servs.*, 245 N.C. App. 144, 150, 782 S.E.2d 75, 79 (2016)). We agree with the Court of Appeals that, generally, "[e]very element of a parallel series must be a functional match of the others (word, phrase, clause, sentence) and serve the same grammatical function in the sentence (e.g., noun, verb, adjective, adverb). When linked items are not like items, the syntax of the sentence breaks down . . . ." *Falin*, 245 N.C. App. at 150, 782 S.E.2d at 79) (quoting The Chicago Manual of Style § 5.212 (16th ed. 2010)). In subsection 6-19.1(a) an adjective, "any," modifies a phrase, "civil action," while singular indefinite articles, "an" and "a," modify the phrases "adjudication for the purpose of establishing or fixing a rate" and "disciplinary action by a licensing board." This parallel use of singular indefinite

articles ties together the phrases related to establishing and fixing a rate and disciplinary action by a licensing board and it differentiates those phrases from the phrase "civil action." This common grammatical form implies a common function: to set out exceptions to the general provision that the trial court may award attorney's fees in "any civil action."

This interpretation, however, fails to account for the excessive comma use throughout the relevant portion of the statute. The following disputed portion of N.C.G.S. § 6-19.1(a) contains a series of three commas: "In any civil action, other than an adjudication for the purpose of establishing or fixing a rate, or a disciplinary action by a licensing board, brought by the State or brought by a party who is contesting State action . . . ." If the clauses related to establishing or fixing a rate and disciplinary actions are to be read as performing the same grammatical function within the sentence—i.e., modifying the phrase "any civil action"—the comma separating them is entirely superfluous.

The fact that the rate-fixing clause is set off by a pair of commas arguably might indicate that the clause is intended as an interrupting modifier, altering the meaning of the noun phrase immediately preceding it. Generally, however, a pair of commas setting off a descriptive phrase denotes a *nonrestrictive* clause—one that describes, but is not necessary to preserve the meaning of the sentence. *See* The Chicago Manual of Style § 6.29 (17th ed. 2017); Bryan A. Garner, The Redbook: A Manual on Legal Style § 1.6 (4th ed. 2018). Here, the modifying phrase—whatever it

includes—is necessary to the sentence because without it, "any civil action" could be eligible for an award of attorney's fees without exception. It is clear that at least one—and possibly all—of the first three commas in N.C.G.S. § 6-19.1(a) are misplaced.

Because no interpretation of the statute is free from grammatical error, no plain meaning emerges from the language of N.C.G.S. § 6-19.1(a). Thus, we cannot rely on rules of grammar to guide us through our analysis. Typically, where the plain language of a statute is equally susceptible of multiple interpretations, we must attempt to discern the legislative intent behind the words in order to interpret the statute. Here, however, although the sentence is from a grammatical perspective equally incorrect in each interpretation, we nonetheless find the General Assembly could not have intended to except disciplinary actions by a licensing board from the category of civil actions because such disciplinary actions are not civil in nature.

Chapter 1 of the North Carolina General Statutes, which governs civil procedure, defines a civil "action" as "an ordinary proceeding *in a court of justice,* by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." N.C.G.S. § 1-2 (2019) (emphasis added). Disciplinary actions by licensing boards are administrative proceedings held before a board or commission, which creates its own regulations and enforces compliance upon certificate holders and licensees. Upon finding that there has been a violation, administrative agencies choose between several possible remedies, including suspension or revocation of the

certificate or license. *See, e.g.,* N.C.G.S. § 87-23 (2019). Neither the creation nor the initial enforcement of administrative regulations occurs before a "court of justice." *See Ocean Hill Joint Venture v. N.C. Dep't of Env't, Health & Nat. Res.,* 333 N.C. 318, 321, 426 S.E.2d 274, 276 (1993) (observing that although "[a]rticle IV, section 3 of the Constitution contemplates that discretionary judicial authority may be granted to an agency when reasonably necessary to accomplish the agency's purposes[,]. . . . an agency so empowered is not a part of the 'general court of justice'" (first quoting *In the Matter of Appeal from the Civil Penalty Assessed for Violations of the SPCA,* 324 N.C. 373, 379, 379 S.E.2d 30, 34 (1989); then quoting N.C. Const. art. IV § 2). Thus, proceedings before administrative agencies, including disciplinary actions by a licensing board, are not civil actions.

Indeed, a disciplinary action does not become a civil action until either party petitions for judicial review of the decision of the board or commission, and the matter becomes a contested case before a judge. *See Empire Power Co. v. N.C. Dep't of Env't, Health & Nat. Res.,* 337 N.C. 569, 594, 447 S.E.2d 768, 783 (1994) (noting that judicial review "is generally available only to aggrieved persons who have exhausted all administrative remedies made available by statute or agency rule" (citing N.C.G.S. § 150B-43 (1991))).

Construing the statute to allow the trial court to award attorney's fees for disciplinary actions by a licensing board is also consistent with the remainder of N.C.G.S. § 6-19.1(a), which contains an explicit exception to the statute. Specifically,

the statute provides that "[n]othing in this section shall be deemed to authorize the assessment of attorney's fees for the administrative review portion of the case in contested cases arising under Article 9 of Chapter 131E of the General Statutes." Not only does this language convey an intent to allow the award of attorney's fees for administrative hearings, but it also shows that, if it had intended to do so, the legislature could have explicitly excepted Article 3A from the provisions of N.C.G.S. § 6-19.1.

The statute also provides that "the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees, including attorney's fees applicable to the administrative review portion of the case, in contested cases arising under Article 3 of Chapter 150B, to be taxed as court costs against the appropriate agency." Appellee argued that because disciplinary actions by a licensing board are considered a "contested case" under Chapter 150B, it makes no sense to include "or a disciplinary action by a licensing board" in the statute unless it was intended to be an exclusion. This contention is incorrect.

The Administrative Procedure Act contains multiple articles and covers different types of proceedings. Administrative actions that become subject to judicial review have both administrative and judicial components. Disciplinary proceedings before licensing boards—like the one that is before us in this case—are covered by Article 3A of Chapter 150B of the North Carolina General Statutes. Under our interpretation of N.C.G.S. § 6-19.1, the separate reference to disciplinary proceedings

found in that statutory provision authorizes awards of attorney's fees for both phases of such a proceeding. On the other hand, the provision authorizing attorney's fee awards in administrative proceedings conducted pursuant to Article 3 of Chapter 150B applies to a different set of cases, with the relevant language serving to authorize attorney's fee awards in both the administrative and judicial components of such proceedings, given that the judicial review portion is covered by the statutory reference to "civil actions" and the administration portion is covered by the additional language expressly authorizing fee awards in the administrative portion of such proceedings. For this reason, the interpretation of N.C.G.S. § 6-19.1 that we deem appropriate in this case does not render the statutory reference to the administrative portion of cases arising under Article 3 of Chapter 150B "useless or redundant." *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. at 556, 276 S.E.2d at 447 (stating that the court should construe the statute so that "none of its provisions shall be rendered useless or redundant").

Accordingly, we hold that the legislature intended to allow trial courts to award attorney's fees in a disciplinary action by a licensing board.


2. Substantial Justification and Special Circumstances

Section 6-19.1 provides that a judge may award attorney's fees in eligible matters only upon a finding that the agency acted without substantial justification and that there are no special circumstances that would make the award of attorney's

fees unjust. Because substantial justification existed to support the Board's claim in this case, we conclude that the trial court abused its discretion in awarding attorney's fees for both the administrative and judicial review proceedings.

We review a trial court's decision to award attorney's fees under N.C.G.S. § 6-19.1 for abuse of discretion. *See High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 234 N.C. App. 336, 338, 760 S.E.2d 750, 753 (2014) ("By the clear language of the statute, once the trial court makes the appropriate findings required in subsections (1) and (2) of N.C.G.S. § 6-19.1(a), its decision on whether or not to award attorney's fees is discretionary."). "To show an abuse of discretion and reverse the trial court's order[, the] appellant has the burden to show the trial court's rulings are 'manifestly unsupported by reason,' or 'could not be the product of a reasoned decision.' " *Id.* at 340, 760 S.E.2d at 753 (quoting *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 610, 617 S.E.2d 40, 50 (2005)).

The purpose of N.C.G.S. § 6-19.1 is to "curb unwarranted, ill supported suits initiated by State agencies," by requiring that the State's action be substantially justified. *Crowell Constructors v. State ex rel. Cobey*, 342 N.C. 838, 844, 467 S.E.2d 675, 679 (1996). This standard is not so stringent that the agency must "demonstrate the infallibility of each suit it initiates" or even prevail in the action. *Id.* Nor is the standard so lax that the State may avoid liability for attorney's fees by demonstrating merely that its suit is not frivolous. *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 566, 108 S. Ct. 2541, 2550 (1988)). Rather, this Court has adopted "a middle-ground

objective standard to require the agency to demonstrate that its position, at and from the time of its initial action, was rational and legitimate to such degree that a reasonable person *could* find it satisfactory or justifiable in light of the circumstances then known to the agency." *Id.*

Throughout the proceedings in the instant case, the Board has contended that the deaths and injuries at the center of this controversy are "the precise kind of harm the legislature intended to bring under the authority of the Board 'in order to protect the public health, comfort and safety.'" *Winkler I*, 249 N.C. App. at 591, 790 S.E.2d at 735.

Specifically, N.C.G.S. § 87-23(a) grants the Board authority to do the following:

> [R]evoke or suspend the license of or order the reprimand or probation of any plumbing, heating, or fire sprinkler contractor, or any combination thereof . . . who fails to comply with any provision or requirement of this Article [2], or the rules adopted by the Board, or for gross negligence, incompetency, or misconduct, in the practice of or in *carrying on the business* of a plumbing, heating, or fire sprinkler contractor, or any combination thereof, as defined in this Article.

N.C.G.S. § 87-23(a) (2019) (emphasis added).

Subsection 87-21(a)(5)[1] of the North Carolina General Statutes, at the time of the events, defined "engaged in the business" as the act of or offer to perform

---

[1] Following the events giving rise to this case, the statute was amended to include any person who "verifies, inspects, evaluates, tests, installs, alters or restores" plumbing or heating devices or offers to perform those services. N.C.G.S. § 87-21(a)(5) (2019).

installations, alterations, or restorations. N.C.G.S. § 87-21(a)(5) (2017). The terms "install," "alter" and "restore" were not defined in the statute. The term "restore" can mean a number of things, including "to put or bring back into existence or use" or "to bring back to or to put back into a former or original state." *Restore,* Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/restore (last visited May 26, 2020). The Board argued that Winkler's actions with regard to the pool heater were consistent with this definition.

According to the Board's unchallenged findings of fact, Winkler was asked to "examine the pool heater and get it running." Winkler then examined the heater and, "[a]long with the Best Western [H]otel maintenance staff," turned on the pool heater. Winkler's services were again requested following the death of two occupants, and he concluded that there was no gas leak, despite obvious signs of a leak. As a result of the gas leak, three people died and one person was seriously injured.

The Board argued that Winkler's actions "put [the pool heating system] back into use." That is, he restored the system. The Court of Appeals ultimately concluded that Winkler's actions in turning on the pool heating system did not rise to the level of a restoration. That decision is not before this Court, and we express no opinion on it. Even assuming that the Court of Appeals' decision in *Winkler I* was correct, we cannot agree, however, that the Board's arguments were irrational or illegitimate in light of the facts. Despite failing to prevail on the merits of its claim, the Board was substantially justified in contending that Winkler engaged in the type of conduct the

Board was authorized to discipline.[2]

For the foregoing reasons, we hold that the trial court erred in awarding Winkler attorney's fees, pursuant to N.C.G.S. § 6-19.1, because there was substantial justification for the Board's claims.

MODIFIED AND AFFIRMED.

---

[2] Because the Board acted with substantial justification, we need not consider whether special circumstances existed that would make the award of attorney's fees unjust.