*519 • JACKSON, Justice.
In this appeal we consider whether an injured person may bring a civil action against a defendant pursuant to the civil relief provision of the Sedimentation Pollution Control Act of 1973 (“SPCA”) when the defendant has received notices of noncompliance, but has not been cited for a violation of a relevant law, rule, order, or erosion and sedimentation control plan. We hold that before an injured person can have standing to bring a civil action pursuant to section 113A-66 of the SPCA, the defendant must have been cited for a violation of a law, rule, ordinance, order, or erosion and sedimentation control plan. Accordingly, we modify and affirm the opinion of the Court of Appeals majority.
On 1 September 2005, plaintiff Applewood Properties, LLC sold a parcel of land located adjacent to the Apple Creek Executive Golf Club, LLC to defendants New South Properties, LLC and Apple Creek Village, LLC for development as a residential community. Subsequently, New South hired defendant Urban Design Partners to design erosion control measures, site plans, storm water collection and control systems, and utilities for the project. On 15 September 2005, New South obtained approval of its erosion and sedimentation control plan from the Gaston County Natural Resources Department (“GNRD”). New South then hired defendant Hunter Construction Group, Inc. to prepare the parcel for construction of new homes in accordance with the approved plan. Hunter cleared and graded the parcel and built erosion control structures and devices, including a silt collection basin.
On 28 March 2006, the GNRD inspected the parcel and found that New South had “[f]ail[ed] to [t]ake [a]ll [reasonable [m]easures” to control erosion and sedimentation as required by Title 15A, Chapter 04B, Section .0105 of the North Carolina Administrative Code. The GNRD indicated in its report that corrective actions were necessary, including “a revision with an added berm with stone wier to the draw in the center of the property to reduce the concentrated flow to the basin that is it’s [sic] outlet.” The GNRD sent New South a “Notice of Non-Compliance,” which informed New South of its “[fjailure to take all reasonable measures” and mandated that it take the aforementioned corrective actions by 11 April 2006. New South forwarded the notice to Hunter and instructed the contractor to correct the problems. After inspecting the parcel again on 5 May 2006, the GNRD found that the site was in compliance with the SPCA, but indicated *520 that additional corrective actions were needed, including “[m]ak[ing] sure all basins are cleaned and maintained, per our conversation.”
On 27 June 2006, a dam that Hunter had constructed to form the silt collection basin ruptured, causing mud, water, and other debris to flood the golf course. The GNRD inspected the parcel and found that New South had taken “Insufficient Measures to Retain Sediment on Site” in violation of section 113A-57(3) of the North Carolina General Statutes and had “Fail[ed] to Take All Reasonable Measures” to control erosion and sedimentation. The GNRD noted in its report that sediment damage had occurred as a result of “Offsite sediment [being deposited] onto [the] neighboring golf course.” The GNRD issued a “Notice of Non-Compliance” to New South, which informed New South of these findings and mandated that the company take corrective action, including “Restor[ing] adaquate [sic] sediment control measures, to retain sediment on site” by 6 July 2006. New South continued to forward these notices to Hunter.
Representatives from Hunter visited the site to assess the damage, and they told New South’s project manager that “they were going to take care of it.” Although Hunter initially undertook some cleanup and repair work following the rupture, it ultimately suspended its efforts several weeks later before completing the work. As a result, the silt collection basin repeatedly overflowed in the ensuing months, depositing more mud and silt onto the golf course. The GNRD issued New South another “Notice of Non-Compliance” on 13 July 2006, indicating that the company had “Fail[ed] to submit [a] revised Plan” that showed the “changes to topography and drainage area” that had occurred on the parcel. On 23 August 2006, the GNRD again issued New South a “Notice of Non-Compliance,” indicating that the company had failed to: (1) “submit [a] revised Plan”; (2) “provide adequate ground cover”; (3) “take all reasonable measures”; and (4) “maintain erosion control measures.” The GNRD also mandated corrective actions, including submission of a revised plan.
New South submitted a revised plan to the GNRD, but on 8 September 2006, the GNRD “disapproved” the plan. Nonetheless, on 25 October 2006, the Gaston County Environmental Review Board “resolved that no further action [wa]s required on [the] site, provided that vegetation [wa]s established and [the] site [wa]s adequate to retain sediment on site for the purpose of water quality.” Meanwhile, the GNRD continued to issue “Noticefs] of Non-Compliance” to New South through March 2009. In addition, on 8 January 2007, the North Carolina Division of Water Quality issued New South a “Notice of Violation” for *521 failing to comply with the “State General Stormwater Permit” that was issued along with its approved erosion and sediment control plan.
As a result of the damage to the golf course, on 4 December 2006, plaintiffs filed an action against New South, Apple Creek Village, and Hunter, asserting claims of negligence, nuisance, trespass, violations of the SPCA, negligence per se, and intentional misconduct and gross negligence. Plaintiffs added Urban Design as a defendant on 17 April 2009. On 3 August 2009, Hunter moved for partial summary judgment on the SPCA claim. Apple Creek Village also moved for partial summary judgment, and New South moved for summary judgment on all claims against it. On 16 April 2010, the trial court granted these defendants’ motions for summary judgment on the SPCA claim, but denied the motions as to all other claims.
The remaining claims were heard in the Superior Court, Gaston County beginning on 19 April 2010. At the conclusion of the evidence, the jury found that plaintiffs were damaged by defendants’ negligence and concluded that plaintiffs were entitled to $675,000.00 in damages. On 10 June 2010, the trial court entered its judgment, awarding plaintiffs $675,000.00 in damages.
On 23 September 2010, plaintiffs appealed the trial court’s order granting defendants’ motions for summary judgment on the SPCA claim. Subsequently, plaintiffs filed a motion to withdraw their appeal against all defendants except Hunter. The Court of Appeals allowed plaintiffs’ motion on 1 July 2011. The Court of Appeals later affirmed the trial court’s order in a divided opinion. Applewood Props., LLC v. New S. Props., LLC, — N.C. App. —, 725 S.E.2d 360 (2012). The majority concluded that the SPCA did not apply because “a ‘land-disturbing activity’ requires an element.of deposition into a body of water” and there was no evidence in this case that sediment had been deposited into a body of water. Id. at —, 725 S.E.2d at 362. The dissent disagreed and argued that the relevant statutory provisions indicate that “a ‘land-disturbing activity’ subject to the provisions of the SPCA is one which ‘may cause or contribute to sedimentation,’ rather than one which actually does result in sedimentation.” Id. at —, 725 S.E.2d at 366 (Ervin, J., dissenting) (citation omitted). Therefore, the dissent concluded that sedimentation “cannot be understood to incorporate a deposition into a body of water requirement.” Id. at —, 725 S.E.2d at 366 (quotation marks omitted).
Plaintiffs appealed to this Court as of right pursuant to section 7A-30(2) of the North Carolina General Statutes. Without considering *522 the merits of plaintiffs’ appeal, we conclude that plaintiffs lacked standing to bring an SPCA claim against Hunter.
Whether plaintiffs had standing to bring an SPCA claim against Hunter hinges on the proper interpretation of section 113A-66 of the North Carolina General Statutes, which provides injured persons a private cause of action pursuant to the SPCA. As a result, “[t]his matter presents a question of statutory interpretation, which we review de novo. The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent.” Dickson v. Rucho, 366 N.C. 332, 339, 737 S.E.2d 362, 368 (2013) (citations and internal quotation marks omitted). It is well settled that:
[ W]hen the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment. In these situations, the history of the legislation may be considered in connection with the object, purpose and language of the statute in order to arrive at its true meaning. However, [w]hen the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required.
In re Foreclosure of Vogler Realty, Inc., 365 N.C. 389, 392, 722 S.E.2d 459, 462 (2012) (alterations in original) (citations and internal quotation marks omitted).
Subsection 113A-66(a) states in pertinent part:
(a) Any person injured by a violation of this Article or any ordinance, rule, or order duly adopted by the Secretary or a local government, or by the initiation or continuation of a land-disturbing activity for which an erosion and sedimentation control plan is required other than in accordance with the terms, conditions, and provisions of an approved plan, may bring a civil action against the person alleged to be in violation (including the State and any local government). The action may seek any of the following:
(1) Injunctive relief.
(2) An order enforcing the law, rule, ordinance, order, or erosion and sedimentation control plan violated.
(3) Damages caused by the violation.
*523 N.C.G.S. § 113A-66(a) (2011) (emphases added). The plain language of subsection 113A-66(a) indicates that the legislature intended to provide injured persons a private cause of action when there has been a violation of: (1) the SPCA; (2) a relevant ordinance, rule, or order; or (3) an erosion and sedimentation control plan. The first clause of subsection 113A-66(a) unambiguously states that a private cause of action will lie when there has been a violation of the SPCA or a relevant ordinance, rule, or order. Although the term “violation” does not appear in the second clause of subsection 113A-66(a), the legislature’s use of the term “violated” in subdivision 113A-66(a)(2), which also refers to “law, rule, ordinance, [and] order,” demonstrates the General Assembly’s intent that a violation of, rather than mere noncompliance with, an erosion and sedimentation control plan must have occurred to give rise to a private cause of action pursuant to this clause. See id. § 113A-66(a)(2). Furthermore, the directive in subsection 113A-66(a) that injured persons “may bring a civil action against the person alleged to be in violation” evidences the legislature’s intent that a defendant actually have been cited for a violation before a private cause of action can arise. See id. § 113A-66(a) (emphasis added). “We presume that the General Assembly carefully chose each word used in drafting the legislation.” Dickson, 366 N.C. at 344, 737 S.E.2d at 371 (internal quotation marks omitted). The legislature could have used the word “noncompliance,” or another broader term to describe the conduct necessary to trigger a private cause of action, but chose not to do so. Instead, it opted to use the narrow term “violation.” As such, we conclude that the legislature intended to create a private cause of action only when the defendant has been cited for a violation pursuant to the SPCA.
This interpretation is consistent with our decision in Holly Ridge Associates, LLC v. North Carolina Department of Environment & Natural Resources, in which we recognized that an aggrieved party might be entitled to bring a civil action pursuant to section 113A-66 in a case in which the defendant had been cited for a violation of the SPCA. See 361 N.C. 531, 533, 538, 648 S.E.2d 830, 833, 836 (2007) (stating that the defendant previously had received “a Notice of Violations of’ the SPCA and had been assessed a civil penalty by the Department of Environment and Natural Resources and observing that the intervening parties’ “allegations of injury could be an appropriate basis ... to file a private claim under the SPCA”). Moreover, this interpretation does not leave an injured person without recourse when the offending party has not been cited for a violation because the injured person alternatively may bring a traditional tort action in *524 nuisance for any damages caused by the offending party’s actions. In fact, in the case sub judice plaintiffs did pursue such a successful claim. Therefore, we hold that for an injured person to have standing to bring a civil action against a defendant pursuant to section 113A-66, the defendant previously must have been cited for a violation of a law, rule, ordinance, order, or erosion and sedimentation control plan as described by this section. Were we to hold otherwise, a defendant could be subject to civil liability pursuant to the SPCA even if its actions had not risen to the level of a violation.[1] The legislature certainly did not intend such an absurd result, especially in cases such as this in which the enforcing agency has given the offending party an allotted time period in which to take corrective actions before being subjected to any penalties pursuant to the SPCA. See Nationwide Mut. Ins. Co. v. Mabe, 342 N.C. 482, 494, 467 S.E.2d 34, 41 (1996) (“[T]h[is] Court will, whenever possible, interpret a statute so as to avoid absurd consequences.” (quotation marks omitted)).
In the case sub judice it is apparent that the GNRD issued New South numerous “Notice[s] of Non-Compliance” during the eight months leading up to the filing of plaintiffs’ SPCA claim. These notices were sent to New South, but not Hunter, and informed the recipient of numerous violations of relevant ordinances, statutes, and administrative code provisions and recommended appropriate corrective actions. Although the GNRD repeatedly warned New South about these violations, neither New South nor Hunter ever was issued a “Notice of Violation” before plaintiffs initially brought their SPCA claim.[2] Instead, the GNRD repeatedly informed New South that it would have the opportunity to take corrective actions within a specified time period before being subject to any penalties pursuant to the SPCA. Although it is notable that none of these “Noticefs] of Non *525 Compliance” were directed at Hunter, that fact is immaterial in the case before us. Because Hunter never was cited for a violation, we must conclude that plaintiffs lacked standing to bring a civil action against Hunter pursuant to section 113A-66. Therefore, the trial court properly granted defendants’ motions for summary judgment on plaintiffs’ SPCA.claim against Hunter. Accordingly, we modify and affirm the opinion of the Court of Appeals majority.
MODIFIED AND AFFIRMED
Justice BEASLEY did not participate in the consideration or decision of this case.

. In the instant case, this holding is even more compelling because the notices of noncompliance were issued to New South, rather than Hunter. As such, Hunter never was directly put on notice that it potentially could be held responsible for any of the violations.

. As we have noted, the record indicates that the Division of Water Quality issued New South a “Notice of Violation” for failing to comply with the “State General Stormwater Permit” on 8 January 2007, nearly one month after plaintiffs brought their SPCA claim on 4 December 2006. Since this notice was issued after plaintiffs filed their original complaint, it could not have conferred standing on plaintiffs to bring their SPCA claim on 4 December 2006. However, we also note that the record indicates that plaintiffs filed an amended complaint on 17 April 2009, well after New South was issued the “Notice of Violation.” Nevertheless, we need not decide the effect of plaintiffs’ amended complaint because the “Notice of Violation” was issued to New South, and we are concerned only with plaintiffs’ standing to sue Hunter in the case sub judice.