IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-675

No. COA21-709

Filed 18 October 2022

Wake County, No. 20 CVS 8346

TAMIKA WALKER KELLY, KRISTY MOORE, AMANDA HOWELL, KATE MEININGER, ELIZABETH MEININGER, JOHN SHERRY, and RIVCA RACHEL SANOGUEIRA, Plaintiffs,

v.

STATE OF NORTH CAROLINA and NORTH CAROLINA STATE EDUCATIONAL ASSISTANCE AUTHORITY, Defendants, and

PHILIP E. BERGER *in his official capacity as President Pro Tempore of the North Carolina Senate, and* TIMOTHY K. MOORE *in his official capacity as Speaker of North Carolina House of Representatives,*

Intervenor-Defendants, and

JANET NUNN, CHRISTOPHER AND NICHOLE PEEDIN, and KATRINA POWERS,

Intervenor-Defendants.

Appeal by Defendants and Intervenor-Defendants from order entered 7 May 2021 by Judge G. Bryan Collins, Jr. in Wake County Superior Court. Heard in the Court of Appeals 8 June 2022.

> *Patterson Harkavy LLP, by Burton Craige, Narendra K. Ghosh, Trisha S. Pande, and Paul E. Smith, for Plaintiff-Appellees.*

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Tamika Henderson and Special Deputy Attorney General Laura H. McHenry, for the State.*

*Womble Bond Dickinson (US) LLP, by Matthew F. Tilley and Russ Ferguson; and Liberty Justice Center, by Jeffrey D. Jennings, for Legislative-Intervenor-Defendant-Appellants.*

*Nelson Mullins Riley & Scarborough, LLP, by John E. Branch, III and Andrew D. Brown; and Institute for Justice, by Ari Bargil, Michael Bindas, Joseph Gray, and Marie Miller, for Parent Intervenor-Defendant-Appellants.*

WOOD, Judge.

¶ 1    The State and the North Carolina Education Assistance Authority ("Defendant SEAA") (collectively, the "Defendants"); Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, in his official Capacity as Speaker of the North Carolina House of Representatives (collectively, the "Legislative-Intervenors"); and Janet Nunn, Christopher and Nichole Peedin, and Katrina Powers (collectively, the "Parent-Intervenors") appeal from an order denying the Defendants' and Legislative-Intervenors' motions to transfer this case to a three-judge panel pursuant to N.C. Gen. Stat. § 1-267.1 and N.C. Gen. Stat. § 1A-1, Rule 42(b)(4).  On appeal, Legislative-Intervenors, Parent-Intervenors (collectively, the "Intervenor-Defendants"), and Defendants assert various arguments contending the constitutional claims within Plaintiffs' complaint constitute facial challenges.  Defendants and Intervenor-Defendants all filed petitions for writ of certiorari to this Court.  In our discretion, we grant their petitions

for writ of certiorari. After a careful review of the record and applicable law, we reverse the trial court's order and remand to the trial court to enter an order to transfer this case to a three-judge panel of the Superior Court of Wake County pursuant to N.C. Gen. Stat. § 1-267.1 and Rule 42(b)(4).

## I. Factual and Procedural Background

In 2013, the North Carolina General Assembly enacted the Opportunity Scholarship Program (the "Program"). This program operated to provide funds to eligible North Carolina students to assist in paying tuition at any nonpublic school. N.C. Gen. Stat. § 115C-562.2(a) (2020). This program "allows a small number of students in lower-income families to receive scholarships from the State to attend private school." *Hart v. State*, 368 N.C. 122, 126, 774 S.E.2d 281, 284-85 (2015).

Under this program, Defendant SEAA makes applications available each year for "eligible students for the award of scholarship grants to attend any nonpublic school." § 115C-562.2(a) (2020). A "nonpublic school" is a "school that meets the requirements of Part 1 [private church schools and schools of religious charter] or Part 2 [qualified nonpublic schools] of this Article as identified" in Chapter 115C, Article 39 of our General Statutes. N.C. Gen. Stat. § 115C-562.1(5) (2020); *see Hart* 368 N.C. at 127, 774 S.E.2d at 285. An "eligible student" is one who secures admission to a nonpublic school and is a child 1) who was a full-time student attending a North Carolina public school or Department of Defense school in North Carolina the

previous semester, 2) who was a scholarship recipient from the previous year, 3) who is entering either Kindergarten or first grade, 4) who is in foster care, 5) whose adoption decree was not entered more than one year prior, or 6) who has a full-time active duty military parent or a parent who received honorable discharge less than 12 months prior. § 115C-562.1(3)(a)(1)-(7). The student must, furthermore, reside "in a household with an income level not in excess of one hundred fifty percent (150%) of the amount required for the student to qualify for the federal free or reduced-price lunch program"[1] or be "in foster care as defined in G.S. 131D-10.2." § 115C-562.1(3)(b).

¶ 4      Defendant SEAA awards the Program's scholarships to students. § 115C-562.2(a). Preference is given first to students who received a scholarship grant the year prior, then to students in lower-income families, and finally to any other eligible students. § 115C-562.2(a)(1)-(2). An eligible student may receive a scholarship award up to $4,200.00. After a student has satisfied the eligibility criteria and received a scholarship award, Defendant SEAA then transfers the funds directly to

---

[1] In 2013, the designated statutory limit was "one hundred thirty-three percent (133%) of the amount required for the student to qualify for the federal free or reduced-price lunch program." N.C. Gen. Stat. § 115C-562.1(3)(b) (2013). In 2020, our General Assembly increased this limit to "one hundred fifty percent (150%) of the amount required for the student to qualify for the federal free or reduced-price lunch program." N.C. Gen. Stat. § 115C-562.1(3)(b) (2020). Our General Assembly raised the limit once again in 2021 to "one hundred seventy-five percent (175%) of the amount required for the student to qualify for the federal free or reduced-price lunch program." N.C. Gen. Stat. § 115C-562.1(3)(b)(1) (2021).

the participating school on the student's behalf.

On July 27, 2020, Plaintiffs filed a complaint concerning the Program against Defendants. Their complaint raised three claims, alleging, *inter alia*, the program violates Article I, Sections 13 and 19 of the North Carolina Constitution by subjecting them to religious discrimination and interferes with their rights of conscience and Article I, Sections 13-15 and 19 and Article V, Sections 2(1) and 2(7) of the North Carolina Constitution. Within the first claim, Plaintiffs contend the Program violates their rights under Article I, Sections 13 and 19 in the following manner: The Program subjects them to religious discrimination and interferes with their rights of conscience by 1) funding educational opportunities that are conditioned on the Plaintiffs' and their family members' religious faiths and sexual orientations, 2) creating a program in which a student's choice of schools is limited by his or her religious faith, 3) funding schools that condition enrollment on the adoption of religious beliefs condemning homosexuality, 4) directing their taxpayer dollars to schools that discriminate against those who adhere to Plaintiffs' religious faiths, 5) dividing communities by religion, and 6) denying Plaintiffs the ability to live in a community without state-supported discrimination.

In Plaintiffs' second claim for relief, they contend the program as implemented violates Article I, Sections 13, 14, and 19 and Article V, Sections 2(1) and 2(7) of the North Carolina Constitution in that it funds schools which,

[1)] refuse admission to students whose beliefs do not conform with the school's official doctrine[;] . . . [2)] reserve the right to discipline or expel students whose spiritual beliefs diverge from the school's official doctrine[;] . . . [3)] require students and their family members to conform their lifestyle to the school's religious dictates, both in and out of school[;] . . . [4)] condemn homosexuality and bisexuality; forbid gay students and their family members from being open about their sexual orientation; threaten to expel gay, bisexual, or gender nonconforming students if they are open about their sexual orientation, gender identity, or transgender status; prohibit students from expressing support for LGBTQ rights; and require students to adopt religious beliefs that condemn LGBTQ rights[;] . . . [5)] require students and their families to regularly attend services at certain religious institutions, and admit only students whose families are willing to regularly attend services at certain religious institutions. . . . [and 6)] mandat[e] religious services, activities, and instruction [as] a central and integral part of the school's curriculum.

¶ 7    Lastly, Plaintiffs' final claim contends the program violates Article 1, Section 15 and Article V, Sections 2(1) and 2(7) of the North Carolina Constitution because "[t]he transfer of taxpayer funds to private schools without any accountability or requirements ensuring that students will actually receive an education is not for the purpose of education or for any other public purpose." Plaintiffs further bolster their third claim by arguing Defendant SEAA has "abdicated its statutory obligations regarding oversight of the Program." Plaintiffs, in their prayer for relief, requested the trial court to declare the Program to be unconstitutional as implemented; enter a permanent injunction enjoining selection of voucher recipients, disbursement of

funds, and appropriations to the reserve fund; award them costs; and award any other legal and equitable relief as the trial court deemed necessary.

¶ 8        Thereafter, the Parent-Intervenors filed a motion to intervene on August 19, 2020.  The trial court denied their motion on October 14, 2020.  In response, the Parent-Intervenors first filed a notice of appeal, then filed a motion for clarification or, in the alternative, a motion to stay and ultimately filed a joint motion with the Plaintiffs requesting the trial court reconsider the October 14, 2020 order.  The latter motion came before the trial court for a hearing the following month, and the trial court subsequently entered an order permitting the Parent-Intervenors to intervene in this case under Rule 24(b).  Additionally, the Legislative-Intervenors intervened in this case.

¶ 9        On October 20, 2020, Defendants filed a motion to transfer the case to a three-judge panel.  Defendants argued Plaintiffs' complaint "clearly asserts a facial constitutional challenge" and thus "must be heard by a three-judge panel of the Superior Court of Wake County" pursuant to N.C. Gen. Stat. § 1-267.1 and North Carolina Rules of Civil Procedure 42(b)(4).  The Legislative-Intervenors, likewise, filed a motion to transfer to a three-judge panel on January 6, 2021.[2]

---

[2] Parent-Intervenors did not file a motion to transfer to a three-judge panel. However, they did specify at the hearing they were "in support of the motions by the state defendants and the legislative-intervenors" and proceeded to provide additional argument.

¶ 10    These motions came before the trial court for a hearing on May 6, 2021. The next day, the trial court entered an order denying the motions to transfer to a three-judge panel, finding "Plaintiffs' Complaint presents an as-applied challenge to the Program, not a facial challenge to the Program." Defendants and Intervenor-Defendants all filed timely notices of appeal.

¶ 11    Parent-Intervenors filed a motion for clarification, or in the alternative a motion to stay, with the trial court on June 14, 2021, requesting the trial court stay its order denying a transfer to a three-judge panel. One week later, on June 21, 2021, Plaintiffs filed a motion to amend the pleading. On July 28, 2021, the trial court entered an order declining to rule on Plaintiffs' motion to amend the pleadings, concluding because the case had been appealed, their motion is, in turn, automatically stayed. The same day, the trial court entered an order denying Parent-Intervenors' motion for clarification and a motion in the alternative to stay. The trial court explained it "declines to issue a blanket order that all potential matters that may arise in this case would constitute proceedings 'upon the judgment appealed from' or a matter 'embraced' within the May 7, 2021, order," thereby allowing Plaintiffs to conduct discovery.

¶ 12    Thereafter, Plaintiffs commenced discovery by sending subpoenas for documents and deposition testimonies and notices of depositions. On August 6, 2021, Parent-Intervenors filed with the trial court a motion to confirm that pending third-

party subpoenas are stayed, or in the alternative a motion to stay those subpoenas. The trial court denied this motion by order entered September 24, 2021.

## II. Jurisdiction

¶ 13        At the outset, we must determine whether this Court has jurisdiction to consider the present appeal. In their petitions, Defendants and Intervenor-Defendants maintain the trial court erred by failing to transfer this case to a three-judge panel, and hence, it is in the interest of justice and a matter of great public importance for this Court to issue a writ of certiorari. Based upon the reasons below, we grant Defendants' and Intervenor-Defendants' petitions for writ of certiorari to permit review of this case.

¶ 14        The North Carolina Rules of Appellate Procedure provides a "writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists." N.C. R. App. P. 21(a)(1). "Certiorari is a discretionary writ," *State v. Ore,* 2022-NCCOA-380, ¶ 15 (emphasis omitted) (quoting *State v. Rouson*, 226 N.C. App. 562, 564, 741 S.E.2d 470, 471 (2013)), and only should be "issued for good and sufficient cause shown." *State v. Gantt*, 271 N.C. App. 472, 474, 844 S.E.2d 344, 346 (2020) (citation omitted). The decision of "[w]hether to allow a petition and issue the writ of certiorari is not a matter of right and rests within the

discretion of this Court." *State v. Biddix*, 244 N.C. App. 482, 486, 780 S.E.2d 863, 866 (2015). We "may only consider certiorari when the petition shows merit, meaning that the trial court probably committed error at the hearing." *State v. Ricks*, 378 N.C. 737, 738, 2021-NCSC-116, ¶ 1; *see Ore*, at ¶ 15 ("A petition for the writ of certiorari must show merit or that prejudicial and reversible error was probably committed below." (brackets omitted)).

As discussed below, we conclude this appeal presents the appropriate circumstances contemplated by Rule 21(a)(1). Therefore, in our discretion, we grant Defendants' and Intervenor-Defendants' petitions for writ of certiorari under Rule 21(a)(1) so as to reach the merits of their appeal.

### III. Standard of Review

Under provisions which mandate a three-judge panel,

> when a party properly advances a facial challenge to the constitutionality of a statute, the trial court lacks jurisdiction to rule on the facial challenge "because sole jurisdiction to decide that matter resides with the Superior Court of Wake County, and the matter is required to be heard and determined by a three-judge panel of the Superior Court of Wake County," as provided by N.C. Gen. Stat. § 1-267.1(b2).

*Lakins v. W. N.C. Conf. of United Methodist Church*, 2022-NCCOA-337, ¶ 19 (quoting *Holdstock v. Duke Univ. Health Sys.*, 270 N.C. App. 267, 281, 841 S.E.2d 307, 317 (2020)).

¶ 17        As such, the trial court's order in the present case raises questions regarding statutory construction and subject matter jurisdiction. *Id.* We review these types of questions *de novo*. *See In re N.P.*, 376 N.C. 729, 2021-NCSC-11, ¶ 5 ("The existence of subject matter jurisdiction is a matter of law and cannot be conferred upon a court by consent. . . . We review questions of law de novo."); *Applewood Props., LLC v. New S. Props., LLC*, 366 N.C. 518, 522, 742 S.E.2d 776, 779 (2013) ("This matter presents a question of statutory interpretation, which we review de novo." (internal brackets omitted)). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Bartley v. City of High Point*, 2022-NCSC-63, ¶ 14 (citation omitted); *see also In re Application for Reassignment of Hayes*, 261 N.C. 616, 622, 135 S.E.2d 645, 649 (1964) ("The word '*de novo*' means fresh or anew; for a second time; and a *de novo* trial in appellate court is a trial had as if no action whatever had been instituted in the court below.").

## IV.    Discussion

¶ 18        The sole argument of Defendants and Intervenor-Defendants on appeal is Plaintiffs' complaint constitutes a facial challenge to the Program, and, thus, the trial court erred when it denied their motion to transfer this case to a three-judge panel pursuant to N.C. Gen. Stat. § 1-267.1 and North Carolina Rule of Civil Procedure 42(b)(4). Plaintiffs disagree and maintain their complaint is an as-applied challenge to the Program. After a careful review of the record and applicable laws, we agree

with Defendants and Intervenor-Defendants and conclude Plaintiffs' complaint is a facial challenge to the Program.

N.C. Gen. Stat. § 1-267.1 is a part of a statutory scheme enacted by the North Carolina General Assembly in 2014 requiring certain cases be transferred to a three-judge panel of the Superior Court of Wake County. Under N.C. Gen. Stat. § 1-267.1,

> any *facial challenge* to the validity of an act of the General Assembly shall be transferred pursuant to G.S. 1A-1, Rule 42(b)(4), to the Superior Court of Wake County and shall be heard and determined by a three-judge panel of the Superior Court of Wake County, organized as provided by subsection (b2) of this section.

N.C. Gen. Stat. § 1-267.1(a1) (2020) (emphasis added). Rule 42(b)(4) compliments Section 1-267.1, stating:

> Pursuant to G.S. 1-267.1, any *facial challenge* to the validity of an act of the General Assembly, other than a challenge to plans apportioning or redistricting State legislative or congressional districts, shall be heard by a three-judge panel in the Superior Court of Wake County if a claimant raises such a challenge in the claimant's complaint or amended complaint in any court in this State, or if such a challenge is raised by the defendant in the defendant's answer, responsive pleading, or within 30 days of filing the defendant's answer or responsive pleading.

N.C. Gen. Stat. § 1A-1, R. 42(b)(4) (2020) (emphasis added).

Under the plain language of N.C. Gen. Stat. § 1-267.1 and Rule 42(b)(4), the requirement that a case be transferred to a three-judge panel is predicated on whether a plaintiff's challenge to the validity of an act by our General Assembly is a

facial or an as-applied challenge. Therefore, the primary question before us is whether Plaintiffs' complaint is properly construed as an as-applied challenge or a facial challenge to the Program.

An as-applied challenge to a statute contest whether it "can be constitutionally applied to a particular defendant, even if the statute is otherwise generally enforceable." *State v. Packingham*, 368 N.C. 380, 383, 777 S.E.2d 738, 743 (2015) (citing *Frye v. City of Kannapolis*, 109 F. Supp. 2d 436, 439 (1999), *rev'd on other grounds,* 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017); s*ee Lakins v. W. N.C. Conf. of United Methodist Church*, 2022-NCCOA-337 ¶ 23 ("[A]s-applied challenge[s] represent[] a party's protest against how a statute was applied in the particular context in which the party acted or proposed to act . . . ." (brackets omitted)). An as-applied challenge is "strongly influenced by the facts" of that specific case. *State v. Grady*, 372 N.C. 509, 522, 831 S.E.2d 542, 554 (2019) (quoting *Packingham*, 368 N.C. at 393, 777 S.E.2d at 749).

In contrast, a facial challenge "is an attack on the statute itself" rather than its application. *Grady*, 372 N.C. at 522, 831 S.E.2d at 554 (quoting *City of Los Angeles v. Patel*, 576 U.S. 409, 415, 135 S. Ct. 2443, 2449, 192 L. Ed. 2d 435, 443 (2015)); *see also Young v. Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021) ("A facial challenge is a claim that the legislature has violated the Constitution, while an as-applied challenge is a claim directed at the execution of the law."), *vacated on other grounds,* 142 S. Ct. 2895

(Mem) (June 30, 2022). "A facial challenge maintains that no constitutional applications of the statute exist, prohibiting its enforcement in any context." *Packingham*, 368 N.C. at 383, 777 S.E.2d at 743; *see also United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697, 707 (1987); *Hart*, 368 N.C. at 131, 774 S.E.2d at 288 (stating the party raising a facial challenge must "meet the high bar of showing that there are no circumstances under which the statute might be constitutional" (citation and internal quotation marks omitted)); *Grady*, 372 N.C. at 522, 831 S.E.2d at 554.

¶ 23        There is no clear-cut test to distinguish facial challenges from as-applied challenges. *See Citizens United v. FEC*, 558 U.S. 310, 331, 130 S. Ct. 876, 893, 175 L. Ed. 2d 753, 776 (2010) ("[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."); *Grady*, 372 N.C. at 546, 831 S.E.2d at 569; *AFSCME Council 79 v. Scott*, 717 F.3d, 851, 865 (11th Cir. 2013) ("[T]he line between facial and as-applied relief is a fluid one, and many constitutional challenges may occupy an intermediate position on the spectrum between purely as-applied relief and complete facial invalidation."). As such, a court is not restricted *per se* by a party's categorization of its challenge as facial or as-applied and may conduct its own review to determine whether the party's challenge is facial or as-applied. *See Doe v. Reed*, 561 U.S. 186, 194, 130 S. Ct. 2811,

2817, 177 L. Ed. 2d 493, 501 (2010). For instance, in *Islamic Community Center for Mid Westchester v. City of Yonkers*, the trial court determined plaintiffs' claims were as-applied challenges notwithstanding plaintiffs' assertion that their claims were facial challenges. *Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 415 (2017), *aff'd,* 742 Fed. App'x 521 (2d Cir. July 6, 2018) (unpublished); *see also Cryan v. Nat'l Council of YMCAs of the U.S.A.*, 280 N.C. App. 309, 2022-NCCOA-612, ¶ 22; *Short Term Rental Owners Ass'n of Ga. v. Cooper*, 515 F. Supp. 3d 1331, 1340 (N.D. Ga. 2021). Thus, "[t]he label is not what matters." *Doe*, 561 U.S. at 194, 130 S. Ct. at 2817, 177 L. Ed. 2d at 501.

¶ 24      When determining whether a challenge is as-applied or facial, the court must look to the breadth of the remedy requested. *Id.*; *Citizens United*, 558 U.S. at 331, 130 S. Ct. at 893, 175 L. Ed. 2d at 776 (2010) ("The distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."), *accord, Grady* 372 N.C. at 546, 831 S.E.2d at 569; *see also AFSCME Council 79*, 717 F.3d at 862. A claim is properly classified as a facial challenge if the relief that would accompany it "reach[es] beyond the particular circumstances of these plaintiffs." *Doe*, 561 U.S. at 194, 130 S. Ct. at 2817, 177 L. Ed. 2d at 501. A claim is properly classified as an as-applied challenge if the remedy "is limited to a plaintiff's particular case." *Libertarian Party v. Cuomo*, 300 F. Supp. 3d 424, 439 (W.D.N.Y. 2018), *overruled on other grounds by N.Y. State Rifle & Pistol*

*Ass'n v. Bruen*, 142 S. Ct. 211, 213 L. Ed. 2d 387 (2022).

¶ 25        In the case *sub judice*, the parties disagree over whether Plaintiffs' claims are properly classified as a facial or an as-applied challenge. Plaintiffs assert three claims in their complaint: 1) the Program as implemented violates Article 1, Sections 13 and 19 of the North Carolina Constitution; 2) "[t]he Program as implemented violates Article I, Sections 13, 14, and 19, and Article V, Sections 2(1) and 2(7)" of the North Carolina Constitution; and 3) "[t]he Program as implemented violates Article 1, Section 15, and Article V, Sections 2(1) and 2(7) of the North Carolina Constitution." Plaintiffs contend their complaint does not facially challenge the Program but challenges how "it has been implemented and applied." The trial court agreed with Plaintiffs' characterization of their claims, finding Plaintiffs stated over eighteen times in their brief that their challenge to the Program is "as implemented." The trial court concluded "Plaintiffs' Complaint presents an as-applied challenge to the Program, not a facial challenge to the program."

¶ 26        Notwithstanding Plaintiffs' repeated assertions, this court is not limited by Plaintiffs' classification of their claims. *See Doe*, 561 U.S. at 194, 130 S. Ct. at 2817, 177 L. Ed. 2d at 501. Rather, we must look to the scope of relief requested by Plaintiffs to determine whether Plaintiffs' claims are properly viewed as a facial or an as-applied challenge.

¶ 27        In their prayer for relief, Plaintiffs requested the following:

(1) Declare that the Program as implemented is unconstitutional under the North Carolina Constitution;

(2) Enter a permanent injunction enjoining the selection of voucher recipients, any further disbursements of money from the Reserve Fund, and any further appropriations to the Reserve Fund;

(3) Award plaintiffs costs pursuant to N.C. Gen. Stat. § 1-263;

(4) Award such other and further legal and equitable relief as this Court deems necessary, just, and proper.

¶ 28        By examining Plaintiffs' claims in conjunction with the relief requested, we note Plaintiffs' claims "would, if successful, effectively preclude all enforcement of the statute." *Copeland v. Vance*, 893 F.3d 101, 107 (2d Cir. 2018). In other words, the remedy sought by Plaintiffs "reach[es] beyond the particular circumstances of these plaintiffs." *Doe*, 561 U.S. at 194, 130 S. Ct. at 2817, 177 L. Ed. 2d at 501. Although Plaintiffs attempt to disguise their complaint as an as-applied challenge, the remedy they seek is to void the statute in its entirety, thereby reaching far beyond their particular circumstance. *See Frye*, 109 F. Supp. 2d at 439 ("[I]f successful in an as-applied claim the plaintiff may enjoin enforcement of the statute only against himself or herself in the objectionable manner, while a successfully mounted facial attack voids the statute in its entirety and in all applications."). To the extent Plaintiffs argue the possibility of broad relief does not alter the nature of their claims, our case law firmly establishes a holding is indicative of a party's facial challenge when "it is

not limited to defendant's particular case but enjoins application . . . to other . . . individuals." *Grady*, 372 N.C. at 547, 831 S.E.2d at 570.

¶ 29      Plaintiffs' complaint primarily raises issues with religious schools receiving scholarships under the Program, explaining "[n]othing in Plaintiffs' Complaint alleges, or even suggests, that the Program would be unconstitutional if the State were not sending funds to schools that discriminate against them and others with similar attributes." However, our General Assembly specifically structured the Program so that religious schools may obtain funding through the Program. A "nonpublic school" as used in N.C. Gen. Stat. § 115C-562.2(a) is defined as a "school that meets the requirements of Part 1 [*private church schools and schools of religious charter*] or Part 2 [qualified nonpublic schools] of this Article as identified" in Chapter 115C, Article 39 of our General Statutes. N.C. Gen. Stat. § 115C-562.1(5) (2020). By arguing the Program is unconstitutional as applied because religious schools may receive funding, Plaintiffs are actually attacking the constitutionality of N.C. Gen. Stat. §§ 115C-562.1 to 562.8. *See Grady*, 372 N.C. at 522, 831 S.E.2d at 554; *Hart*, 368 N.C. at 131, 774 S.E.2d at 288; *Young*, 992 F.3d at 779.

¶ 30      Our review of the record shows, although Plaintiffs pepper their complaint with the words "as implemented," they never pleaded facts necessary to support or demonstrate an as-applied challenge. In order for a court to determine whether a statute as applied is constitutional, *it must examine the pertinent facts for a particular*

*defendant in a particular case.* *Grady*, 372 N.C. at 522, 831 S.E.2d at 554; *Packingham*, 368 N.C. at 383, 777 S.E.2d at 743. In other words, the trial court's ability to examine an as-applied challenge is predicated upon the existence of facts specific to a defendant from which to determine whether the statute is unconstitutional as applied. Here, there are no particular facts alleged from which a determination of whether the Program is unconstitutional as applied may be made. None of the Plaintiffs alleged they applied for a scholarship under the Program, were unconstitutionally denied enrollment into the Program, or applied to an eligible school under the Program. Plaintiffs' complaint reveals they seek to prove their claims by solely attacking the portion of the Program's schools which have religious characteristics. Plaintiffs fail to allege the pertinent facts relating to their particular circumstances necessary to assert an as-applied challenge.[3] Accordingly, because no Plaintiff has applied for a scholarship under the terms of the Program, it is unclear to this Court what facts, if any, exist to support Plaintiffs' individual claims that the Program as applied to him or her is unconstitutional.

---

[3] Regarding the religious nature of some schools within the Program, "[t]he Constitution and the best of our traditions counsel mutual respect and tolerance, not censorship and suppression, for religious and nonreligious views alike." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2416, 213 L. Ed. 2d. 755, 765 (2022). Even if the Program specifically excluded religious schools, such exclusion may no longer make N.C. Gen. Stat. §§ 115C-562.1 to 562.8 neutral. *See id.* at 2422, 213 L. Ed. 2d at 772. ("A government policy will fail the general applicability requirement if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way . . . ." (internal quotation marks omitted)).

¶ 31    The success of Plaintiffs' claims would effectively preclude any enforcement of N.C. Gen. Stat. §§ 115C-562.1-115C562.8, because the plain language of the statute expressly allows for private church schools and schools with religious charters to receive funding. Since Plaintiffs have failed to plead facts and circumstances sufficient to assert an as-applied challenge, we deem the complaint to be a facial challenge to the statute making transfer to a three-judge panel mandatory under N.C. Gen. Stat. § 1-267.1 and Rule 42(b)(4).[4] *See* N.C. Gen. Stat. § 1-267.1(a1) (2020) ("[A]ny facial challenge to the validity of an act of the General Assembly *shall be transferred* . . . to the Superior Court of Wake County and shall be heard and determined by a three-judge panel of the Superior Court of Wake County . . . ." (emphasis added)); § 1A-1, R. 42(b)(4) ("[A]ny facial challenge to the validity of an act of the General Assembly, other than a challenge to plans apportioning or redistricting State legislative or congressional districts, *shall be heard* by a three-judge panel in the Superior Court of Wake County . . . ." (emphasis added)). As such, the trial court erred by denying Defendants' and Legislative-Intervenors' motions to transfer to a three-judge panel.

---

[4] In our holding today, we are cognizant of the fact a "trial court is not free to impute a facial challenge argument on a party." *Cryan v. Nat'l Council of YMCAs of the U.S.A.*, 280 N.C. App. 309, 2021-NCCOA-612, ¶ 23. This statement in *Cryan* does not, in turn, mean a trial court is required to turn a blind eye to a party's obvious attempt to disguise a facial challenge as an as-applied challenge.

¶ 32    Our learned colleague in his dissent concedes that the key factor in assessing whether a claim is a facial or as-applied challenge is "the breadth of the remedy employed by the Court, not what must be pleaded in the complaint." Tellingly, even when given the chance at oral argument, Plaintiffs have been unable to identify any conceivable remedy for their claims that would not require either rewriting the statute or imposing sweeping court supervision on scholarship approvals by regulators. These remedies are unmistakable markers of a facial challenge. Nevertheless, the dissent insists that any "concern as to what relief, if any, might be available to Plaintiffs or what relief, if any, might be granted by a Superior Court Judge in an as-applied challenge is premature. This case simply isn't there yet." This is a strange argument in light of the fact that the trial court has no subject matter jurisdiction if this is a facial challenge. *Cryan v. Nat'l Council of Young Men's Christian Ass'ns of the U.S.A.*, 280 N.C. App. 309, 2021-NCCOA-612, ¶ 16. The court system cannot wait for the case to be over to make that jurisdictional assessment. It must be made at the beginning of the case. "A court's subject matter jurisdiction over a particular case is invoked by the pleading." *Boseman v. Jarrell*, 364 N.C. 537, 546, 704 S.E.2d 494, 501 (2010). Thus, we cannot put on blinders and ignore the relief that Plaintiffs seek simply because we haven't reached the final stages of this litigation. Because Plaintiffs cannot identify any way to obtain a remedy for their claims that would not require all-encompassing changes to the Opportunity

Scholarship Program, their claims are facial in nature and must be transferred to a three-judge panel.

¶ 33        Finally, we pause to note even if Plaintiffs' complaint only asserted an as-applied challenge, which it does not, the primary issue in Plaintiffs' complaint is that the Program unconstitutionally funds religious schools. Notably, because the legislature specifically included private church schools and schools of religious charter, to affirm Plaintiffs' argument, the trial court would "have to rewrite the statute" to specifically exclude religious schools and "not interpret it, . . . [which] we are without constitutional authority to do so." *State v. Minton*, 223 N.C. App. 319, 322, 734 S.E.2d 608, 611 (2012); *see* N.C. Gen. Stat. § 115C-562.1(5) (2020); *see also* N.C. Const. art. I, § 6 ("The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other."); *State v. Scoggin*, 236 N.C. 19, 23, 72 S.E.2d 54, 57 (1952) ("It is our duty to interpret and apply the law as it is written, but it is the function and prerogative of the Legislature to make the law.").

## V.    Conclusion

¶ 34        A party's "label" of whether a claim is designated a facial challenge or an as-applied challenge "is not what matters." *Doe*, 561 U.S. at 194, 130 S. Ct. at 2817, 177 L. Ed. 2d at 501. Because 1) the relief sought by Plaintiffs, if successful, would effectively invalidate the Program in its entirety; 2) they failed to plead facts

particular to them in a particular set of facts; and 3) our General Assembly specifically authorized private church schools and schools of religious charter to receive funding through the Program pursuant to N.C. Gen. Stat. § 115C-562.1(5), we hold the claims asserted by Plaintiffs are facial challenges to the validity of the act of the General Assembly. N.C. Gen. Stat. §§ 115C-562.1 to 562.8. Therefore, the trial court erred by denying Defendants' and Legislative-Intervenors' motions to transfer to a three-judge panel as mandated by N.C. Gen. Stat. § 1-267.1 and Rule 42(b)(4). We reverse and remand to the trial court for this case to be transferred to a three-judge panel of the Superior Court of Wake County pursuant to N.C. Gen. Stat. § 1-267.1 and Rule 42(b)(4). It is so ordered.

REVERSED AND REMANDED.

Judge DIETZ concurs in result.

Judge HAMPSON dissents by separate opinion.

HAMPSON, Judge, dissenting.

To decide at this preliminary stage that Plaintiffs' asserted as-applied constitutional challenge in this case—as a matter of fact and law—can only be a facial constitutional challenge required to be heard by a three-judge-panel is premature and runs counter to the statutory procedure set forth by our General Assembly. This interlocutory appeal should be dismissed, and the Petition for Writ of Certiorari denied. By failing to allow this litigation to proceed in normal fashion in our trial courts, the majority acts contrary to the statutory scheme which requires the Superior Court to make the determination of whether and when it is necessary to transfer the matter to a three-judge panel. In doing so, contrary to our Court's precedent, the majority forces Plaintiffs to make a facial constitutional challenge Plaintiffs have not plead and expressly disavow. Moreover, it does so based on the relief it erroneously assumes would be imposed should Plaintiffs eventually prevail. I, therefore, dissent.

I.

First, this appeal is interlocutory and does not affect a substantial right which would be lost absent immediate appeal. A substantial right is defined as "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a [person] is entitled to have preserved and protected by law: a material right." *Oestreicher v. Am. Nat'l Stores, Inc.*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976) (quotation marks omitted).

Further, a substantial right giving rise to a right of immediate appeal "is one which will clearly be lost if the order is not reviewed before final judgment, such that the normal course of procedure is inadequate to protect the substantial right affected by the order sought to be appealed." *Cryan v. Nat'l Council of YMCA of the United States*, 280 N.C. App. 309, 2021-NCCOA-612, ¶ 12.

¶ 37          Defendants' and Intervenors' primary contention is that N.C. Gen. Stat. § 1-267.1 (2021) constitutes a mandatory venue statute which provides them a substantial right to three-judge panel review. We have now repeatedly rejected this assertion. *Id.* ¶¶ 13-16; *see also Lakins v. W. N. Carolina Conf. of United Methodist Church*, 2022-NCCOA-337, ¶ 11; *Hull v. Brown*, 279 N.C. App. 570, 2021-NCCOA-525, ¶ 18 (denial of motion to transfer to three-judge panel premature prior to other claims being decided).

¶ 38          Parent-Intervenors assert two further alleged substantial rights. First, they claim the trial court's Order affects the right "of parents to use Program scholarships to direct their children's upbringing and education." This contention is meritless. The Order quite clearly does no such thing. Rather, it simply retains jurisdiction over this matter rather than immediately transferring the matter to a three-judge panel. Likewise, Parent-Intervenor's argument the trial court's Order implicates the "ecclesiastical entanglement doctrine" is also baseless. The trial court's Order makes no ruling on the ecclesiastical entanglement doctrine and, indeed, the ecclesiastical

entanglement doctrine has zero bearing on whether this matter is an "as-applied"

challenge to be heard by a single judge or a facial challenge properly transferred to a

three-judge panel. *See Lakins*, 2022-NCCOA-337, ¶ 13.

¶ 39    Moreover, even if the trial court's Order rejecting transfer of this case to a

three-judge panel at this stage of the litigation could be deemed one involving a

matter of substance or a material right, it does not involve any right that would be

lost absent an immediate appeal. Defendants' and Intervenors' primary concern is

that at the conclusion of this litigation, a trial court may (or may not) impose broad

relief mirroring a declaration the Program is facially unconstitutional by imposing a

sweeping, permanent statewide injunction prohibiting the State from any operation

of the Program. To be fair, Plaintiffs' Complaint, as it currently stands, does include

a prayer for relief that may be read as seeking broad relief under an as-applied

challenge. However, this is not dispositive. Indeed, as the Supreme Court of the

United States has indicated the difference between an as-applied challenge and a

facial challenge is less about the pleadings and more about the relief ultimately

imposed:

> the distinction between facial and as-applied challenges is not so
> well defined that it has some automatic effect or that it must
> always control the pleadings and disposition in every case
> involving a constitutional challenge. The distinction is both
> instructive and necessary, for it goes to the breadth of the remedy
> employed by the Court, *not what must be pleaded in a complaint*.

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331, 130 S. Ct. 876, 893, 175 L. Ed. 2d 753, 776 (2010) (emphasis added). Under North Carolina law, the fact Plaintiffs seek equitable injunctive relief only underscores this point. This is because trial courts retain discretion to formulate the proper equitable relief.

> When equitable relief is sought, courts claim the power to grant, deny, limit, or shape that relief as a matter of discretion. This discretion is normally invoked by considering an equitable defense, such as unclean hands or laches, or by balancing equities, hardships, *and the interests of the public and of third persons.*

*Roberts v. Madison Cty. Realtors Ass'n, Inc.*, 344 N.C. 394, 399, 474 S.E.2d 783, 787 (1996) (emphasis added). Moreover, an inexact prayer for relief does not preclude proper relief being granted. " 'It is well-settled law in North Carolina that the party is entitled to the relief which the allegations in the pleadings will justify. . . . It is not necessary that there be a prayer for relief or that the prayer for relief contain a correct statement of the relief to which the party is entitled.' " *Harris v. Ashley*, 38 N.C. App. 494, 498–99, 248 S.E.2d 393, 396 (1978) (quoting *E. Coast Oil Co. v. Fair*, 3 N.C. App. 175, 178, 164 S.E.2d 482, 485 (1968)).

¶ 40        Defendants' and Intervenors' concern as to what relief, if any, might be available to Plaintiffs or what relief, if any, might be granted by a Superior Court Judge in an as-applied challenge is premature. This case simply isn't there yet. If a Superior Court Judge enters a final order declaring the statute facially

unconstitutional: Defendants and Intervenors may appeal then. Likewise, if a Superior Court Judge enters a final order granting relief which Defendants and Intervenors believe improper for an as-applied challenge: Defendants and Intervenors may appeal at that time. This fragmentary appeal is wholly unnecessary. On this Record, at this stage, there is no indication the trial court has any intent to exceed its authority or approach this claim as a facial challenge. To the contrary, the trial court addressing the Motion at issue here quite plainly understood by not transferring the case to a three-judge panel, Plaintiffs would proceed only upon their as-applied challenge theory.

¶ 41 The reality is there is more litigation to be undertaken (not to mention the not-so-small matter of deciding whether Plaintiffs can establish the merits of their claim) before any consideration of an appropriate remedy in this case may be contemplated. Indeed, on this Record there is a pending Motion to Amend the Complaint, which seeks to amend the Complaint to add more particularized allegations as to the individual plaintiffs and making a narrower prayer for relief. If allowed, this Amended Complaint may obviate the need to transfer the case or result in a three-

judge panel no longer having jurisdiction over this case–rendering this Court's opinion effectively an advisory one.[5]

¶ 42    Moreover, if during this ongoing litigation, it becomes evident that relief cannot be granted without a determination as to the facial constitutionality of the Program, the transfer statutes expressly contemplate that very situation. First, all the parties here generally agree a sole Superior Court Judge in this case may not declare the Program facially invalid under N.C. Gen. Stat. § 1-267.1. *See* N.C. Gen. Stat. § 1-267.1 (c) (2021) ("No order or judgment shall be entered affecting the validity of any act of the General Assembly that . . . finds that an act of the General Assembly is facially invalid on the basis that the act violates the North Carolina Constitution or federal law, except by a three-judge panel of the Superior Court of Wake County"). If it is necessary to decide the facial validity of the Program, our statutory Rules of Civil Procedure provide for the trial court to transfer the matter to the three-judge panel after resolving all other issues:

> the court shall, on its own motion, transfer that portion of the
> action challenging the validity of the act of the General Assembly

---

[5] Another possibility arising from the majority opinion is that the three-judge panel rules on the facial constitutionality of the Program, declares it constitutional (if for no other reason than Plaintiffs do not contest the facial validity of the Program) and then remands the matter to the trial court for determination of Plaintiffs' as-applied claims. Alternatively, if the three-judge panel determines Plaintiffs have alleged only a facial challenge to the statute, this would not necessarily preclude Plaintiffs or others similarly situated from bringing an as-applied challenge in a future lawsuit. Again, this is all rather unnecessary and does not promote the swift administration of justice.

to the Superior Court of Wake County for resolution by a three-judge panel if, after all other matters in the action have been resolved, a determination as to the facial validity of an act of the General Assembly must be made in order to completely resolve any matters in the case. The court in which the action originated shall maintain jurisdiction over all matters other than the challenge to the act's facial validity. . . . [T]he original court shall stay all matters that are contingent upon the outcome of the challenge to the act's facial validity pending a ruling on that challenge and until all appeal rights are exhausted. Once the three-judge panel has ruled and all appeal rights have been exhausted, the matter shall be transferred or remanded to the three-judge panel or the trial court in which the action originated for resolution of any outstanding matters, as appropriate.

N.C. Gen. Stat. 1A-1, Rule 42(b)(4) (2021). Additionally, the transfer statutes also contemplate a bifurcated process when a facial validity determination is necessary to resolve a case involving other claims or issues of law.

Venue lies exclusively with the Wake County Superior Court with regard to any claim seeking an order or judgment of a court, either final or interlocutory, to restrain the enforcement, operation, or execution of an act of the General Assembly, in whole or in part, based upon an allegation that the act of the General Assembly is facially invalid on the basis that the act violates the North Carolina Constitution or federal law. Pursuant to G.S. 1-267.1(a1) and G.S. 1-1A, Rule 42(b)(4), claims described in this subsection that are filed or raised in courts other than Wake County Superior Court or that are filed in Wake County Superior Court shall be transferred to a three-judge panel of the Wake County Superior Court if, after all other questions of law in the action have been resolved, a determination as to the facial validity of an act of the General Assembly must be made in order to completely resolve any issues in the case.

N.C. Gen. Stat. Ann. § 1-81.1(a1) (2021). As such, the trial court here may still, after resolving all issues it can, decide transfer to a three-judge panel is required if it determines at any stage of the litigation the facial validity of the statute is at issue in this case and necessary to resolution of the case. *See Holdstock v. Duke Univ. Health Sys., Inc.*, 270 N.C. App. 267, 281, 841 S.E.2d 307, 317 (2020) ("If the trial court decides, after all issues not contingent on the outcome of Plaintiffs' facial challenge are resolved, that resolution of Plaintiffs' facial challenge . . . is still required to permit resolution of remaining issues, it shall, 'on its own motion, transfer that portion of the action . . . to the Superior Court of Wake County for resolution by a three-judge panel[,]' and 'stay all matters that are contingent upon the outcome of . . . that challenge and until all appeal rights are exhausted.' ").

¶ 43     At this interlocutory stage, it is clear from the Record the trial court is allowing Plaintiffs to proceed on—and only on—an as-applied challenge. The entire point of an as-applied challenge is the concept that a law that is otherwise constitutional and enforceable may be unconstitutional in its application to a particular challenger on a particular set of facts. "An as-applied challenge contests whether the statute can be constitutionally applied to a particular [party], even if the statute is otherwise generally enforceable." *State v. Packingham*, 368 N.C. 380, 383, 777 S.E.2d 738, 743 (2015) (citation omitted), *rev'd and remanded on other grounds*, ___ U.S. ___, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017). Here, Plaintiffs concede they are not challenging

the facial validity of the Program. The proper course here, then, is to permit Plaintiffs to proceed under their theory of the case. If, at the end of the day, they cannot show that the otherwise valid and enforceable Program is not constitutionally applied as to them, the result is simple: dismiss the Complaint (or Amended Complaint) and enter Judgment against Plaintiffs and in favor of Defendants and Intervenors. This also has the appellate benefit of resulting in a final appealable order.

¶ 44    Thus, Defendants and Intervenors have not established any substantial right that would be lost absent immediate appeal. Therefore, there is no right of immediate interlocutory appeal in this case. Consequently, this Court has no jurisdiction to entertain this appeal on a Notice of Appeal.

## II.

¶ 45    The majority in this case does not expressly disagree with the above analysis, but, nevertheless, grants certiorari to review this case. Granting certiorari here is improvident. In reaching this conclusion, I echo many of the same concerns raised in Judge Carpenter's dissent in *Cryan*. In *Cryan*, this Court granted certiorari to review and ultimately reverse a trial court's order transferring a case to a three-judge panel. In his dissenting opinion, Judge Carpenter explained:

> This Court's grant of a petition for writ of certiorari to consider whether jurisdiction is proper with a three-judge panel in Wake County Superior Court based solely on Defendant's assertion its constitutional challenge is 'as-applied' shortcuts the statutory scheme prescribed by the

legislature, would be an inappropriate circumvention of the process, and therefore would not 'promote judicial economy,' but would interfere with the 'efficient administration of justice.'

*Cryan*, 2021-NCCOA-612, ¶ 28 (Carpenter, J., dissenting). Judge Carpenter further

noted:

> In granting Defendant's petition for writ of certiorari, this Court will create precedent for a new procedure whereby a party that disagrees with a trial judge's referral of a constitutional challenge to a three-judge panel can petition this Court for a writ of certiorari. In such an instance, this Court will be tasked with explaining why the raised constitutional challenge in the case currently before it is distinguishable from any future constitutional challenge.

*Id.* at ¶ 29. Judge Carpenter also expressed concern

> granting Defendant's petition for writ of certiorari creates an avenue for a party to draw out litigation, contrary to our goal of promoting judicial economy. The majority's grant incentivizes parties who wish to delay a trial on the merits of a case to petition this Court for a decision as to whether the referral of an issue to the three-judge panel was proper in every instance.

*Id.* at ¶ 31.

¶ 46      The majority's grant of certiorari to review the Order in this case declining to refer Plaintiffs' claims to a three-judge panel raises the same concerns expressed by Judge Carpenter in *Cryan*. There is simply no pressing need for this Court to take up this interlocutory appeal to decide what is at base a simple procedural issue that could be remedied or obviated by allowing the proceedings to continue below. By taking this appeal up now, this Court allows Defendants and Intervenors to delay

proceedings and unnecessarily draw out this litigation interfering with the efficient administration of justice. Moreover, by granting certiorari, this Court again ratifies a process by which any decision on whether to refer a case to a three-judge panel may be immediately appealed. Here, it would instead be prudent to retain faith in our Superior Court trial judges to allow this matter to proceed in regular order. Certiorari should be denied in this case.

### III.

While my respectful disagreement with the majority is grounded in the application of appellate procedure, in my view the majority's misapplication of appellate procedure leads to several substantive missteps. First, inconsistent with this Court's precedent, the majority forces Plaintiffs to make a facial challenge contrary to the precedent of this Court. Second, in so doing, inconsistent with the statutes, the majority substitutes its own judgment for that of the trial court. Third, inconsistent with the Record, the majority erroneously characterizes Plaintiffs' claim as targeting all "religious schools" and opines on the merits of an overly broad remedy that Plaintiffs do not seek.

First, the majority erroneously imputes a facial challenge on Plaintiffs. The majority in *Cryan* stated: "While the trial court is free to transfer an action to a three-judge panel on its own motion based on a facial challenge to an act of the General

Assembly, a trial court is not free to impute a facial challenge argument on a party."

*Cryan,* 2021-NCCOA-612, ¶ 23.

> The plain language of the statutory scheme clearly provides that a party must affirmatively raise a facial challenge, and that facial challenge must be raised in either the claimant's complaint/amended complaint or the defendant's answer, responsive pleading, or within 30 days of the defendant's answer or responsive pleading.  N.C. Gen. Stat. §§ 1-81.1, 1-267.1, and 1A-1, Rule 42(b)(4).  No such facial challenge was raised here.

*Id.* ¶ 23

Here, the trial court correctly determined not to impute a facial challenge on Plaintiffs—and, instead, permitted Plaintiffs to sink or swim with their chosen as-applied challenge.  The majority, however, substitutes its own judgment for that of the trial court and forces Plaintiffs to pursue a facial challenge they disavow.  As in *Cryan*, it is error to impute such a facial claim on Plaintiffs in order to force a transfer to a three-judge panel.

Second, by substituting its judgment for that of the trial court in this case, the majority provides parties a bypass around, and inconsistent with the controlling statutes.  In enacting N.C. Gen. Stat. § 1-267.1 along with N.C. Gen. Stat. § 1-81.1(a1) and N.C.R. Civ. P. 42(b)(4), the General Assembly set out a trial level procedure for trial judges to refer facial constitutional challenges—as required or in their discretion—to a three-judge panel.  In so doing, it is plain the General Assembly intended a rolling process in which trial judges are required to remain mindful of the

need to refer such cases to a three-judge panel while retaining jurisdiction to decide the issues that do not need referral. These statutes also clearly place these initial determinations of whether to refer a case or not solely in the hands of the trial court— not this Court. Indeed, the General Assembly did not include an immediate right of appeal from an initial determination on whether to transfer a case to a three-judge panel. *See Cryan*, 2021-NCCOA-612, ¶ 29 (Carpenter, J. dissenting) ("The precedent that flows from the majority's opinion will create a dilemma in which any disagreement between the parties as to whether a constitutional challenge is 'facial' or 'as applied' will be decided by this Court, rather than by [the trial courts] as prescribed by statute.").

¶ 51        Third, having decided to overrule the trial court's interlocutory order by way of certiorari, the majority goes further by commenting on the merits and undertaking to re-frame Plaintiffs' claims and the remedy sought. The majority asserts: "Plaintiffs' complaint is that the Program unconstitutionally funds religious schools." But this is not accurate. Rather, Plaintiffs' Complaint is more nuanced. Plaintiffs claim that the Program, as currently implemented, unconstitutionally provides funding to certain schools that allegedly discriminate against them by way of alleged admission requirements, alleged forced religious doctrinal teachings, or alleged forced religious indoctrination, which, as a practical matter, results in Plaintiffs being excluded from being able to utilize the Program and have access to the same school

choice as other similarly situated North Carolinians. Likewise, the majority's conjecture that the only suitable remedy in this case is rewrite the statute to exclude all religious schools from the Program is also unsupported by the Record. Plaintiffs do not seek to have all funding by the Program of all religious schools declared unconstitutional or religious schools to be excluded from the Program. Rather, Plaintiffs seek injunctive relief against the current implementation of the Program itself because, they claim, it is being used to allegedly unconstitutionally provide funding to schools that allegedly discriminate against Plaintiffs. Whether or not Plaintiffs can prevail on this claim remains to be seen. However, by virtue of the majority opinion in this case mandating a facial constitutional challenge to the Program, should Plaintiffs prevail, the enabling statute and the Program must be declared unconstitutional in their entirety not just as applied to Plaintiffs. North Carolinians, including Parent-Intervenors and students of modest means, will then be deprived of the benefit of the Program and the funds it provides.